IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


BRETT HENDRICKSON,

           Plaintiff,

    v.                                   No.  18-CV-01119-RB-LF

AFSCME COUNCIL 18; MICHELLE LUJAN

GRISHAM, in her official capacity as

Governor of New Mexico; and HECTOR

BALDERAS, in his official capacity as Attorney

General of New Mexico,

           Defendants.


**DEFENDANT AFSCME COUNCIL 18'S MOTION FOR SUMMARY JUDGMENT, STATEMENT OF UNDISPUTED MATERIAL FACTS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AFSCME COUNCIL 18'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................iii

DEFENDANT AFSCME COUNCIL 18'S MOTION FOR SUMMARY JUDGMENT ...........1

INTRODUCTION ................................................................................................. 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ........................................................ 2

ARGUMENT...................................................................................................... 8

    I.     Plaintiff's claims for prospective relief against fair share fees are not
         justiciable. ......................................................................................... 8

    II.    Plaintiff's claims for prospective relief against dues deductions and the
         dues revocation window are not justiciable. ........................................... 9

    III.   The enforcement of Plaintiff's own voluntary dues authorization
         agreements does not violate his First Amendment rights. .............................. 11

        A.  Plaintiff's voluntary membership agreements constitute binding
            contracts. .................................................................................. 11

        B.  The First Amendment does not provide Plaintiff a right to breach his
            voluntary contractual obligations.................................................... 13

        C.  *Janus* does not undermine pre-*Janus* union membership and dues
            deduction agreements................................................................... 15

        D.  The terms of Plaintiff's voluntary union membership agreements do
            not constitute state action triggering First Amendment scrutiny. .............. 17

    IV.   Binding Supreme Court precedent establishes that exclusive-representation
         collective bargaining does not implicate Plaintiff's First Amendment rights. ..20

        A.  The exclusive representation provisions of PEBA do not infringe
            upon Plaintiff's constitutional rights. ............................................. 21

        B.  Exclusive representation bargaining serves compelling state interests.........25

CONCLUSION.................................................................................................27

# TABLE OF AUTHORITIES

**Federal Court Cases**

*Abood v. Detroit Bd. of Educ.*,
  431 U.S. 209 (1977) ................................................................................................ 16, 17

*Adams v. Int'l Bhd. of Boilermakers*,
  262 F.2d 835 (10th Cir. 1958) ........................................................................................ 11

*Akers v. Md. State Educ. Ass'n*,
  --- F.Supp.3d ---, 2019 WL 1745980 (D. Md. Apr. 18, 2019) ................................... 9, 20

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
  526 U.S. 40 (1999) ........................................................................................................... 18

*Babb v. Cal. Teachers Ass'n*,
  --- F.Supp.3d ---, 2018 WL 7501267 (C.D. Cal. Dec. 7, 2018) ...................................... 9

*Babb v. Cal. Teachers Ass'n*,
  2019 WL 2022222 (C.D. Cal. May 8, 2019) ......................................................... 8, 15, 20

*Bain v. Cal. Teachers Ass'n*,
  156 F.Supp.3d 1142 (C.D. Cal. 2015), *appeal dismissed as moot*, 891 F.3d 1206 (9th
  Cir. 2018) ........................................................................................................................ 18

*Begay v. Pub. Serv. Co. of N.M.*,
  710 F.Supp.2d 1161 (D.N.M. 2010) ............................................................................... 10

*Belgau v. Inslee*,
  2018 WL 4931602 (W.D. Wash. Oct. 11, 2018) ....................................................... 11, 15

*Belgau v. Inslee*,
  359 F.Supp.3d 1000 (W.D. Wash. 2019) ............................................................ 16, 18, 20

*Berman v. N.Y. State Pub. Emp. Fed'n*,
  2019 WL 1472582 (E.D.N.Y. Mar. 31, 2019) .................................................................. 9

*Bermudez v. SEIU Local 521*,
  2019 WL 1615414 (N.D. Cal. Apr. 16, 2019) .......................................................... 9, 10, 15

*Bierman v. Dayton*,
  900 F.3d 570 (8th Cir. 2018), *cert denied*, --- S.Ct. ---, 2019 WL 2078110
  (May 13, 2019) .......................................................................................................... 20, 25

*Blum v. Yaretsky*,
  457 U.S. 991 (1982) ......................................................................................................... 20

*Carey v. Inslee*,
  364 F.Supp.3d 1220 (W.D. Wash. 2019) .......................................................................... 9

*City of Madison, Joint Sch. Dist. No. 8 v. Wisc. Emp't Relations Comm'n*,
  429 U.S. 167 (1976) ......................................................................................................... 22

*Cohen v. Cowles Media Co.*,
  501 U.S. 663 (1991) ............................................................... 2, 13, 14, 15

*Cook v. Brown*,
  364 F.Supp.3d 1184 (D. Or. 2019) .......................................................... 9

*Cooley v. Cal. Statewide Law Enf't Ass'n*,
  2019 WL 331170 (E.D. Cal. Jan. 25, 2019) ...................................... 15, 16

*Crockett v. NEA Alaska*,
  367 F.Supp.3d 996 (D. Alaska 2019) ............................................... 15, 20

*D'Agostino v. Baker*,
  812 F.3d 240 (1st Cir. 2016), *cert. denied*, 136 S.Ct. 2473 (2016) ........................................ 20

*Danielson v. AFSCME Council 28*,
  340 F.Supp.3d 1083 (W.D. Wash. 2018).................................................. 9

*Fisk v. Inslee*,
  2017 WL 4619223 (W.D. Wash. Oct. 16, 2017), *aff'd mem.*, 759 F. App'x 632 (9th
  Cir. 2019) .................................................................................... 11, 12, 14

*Grossman v. Hawaii Gov't Emp. Ass'n/AFSCME Local 152*,
  --- F.Supp.3d ---, 2019 WL 2195206 (D. Haw. May 21, 2019) ............................ 20

*Harris v. Quinn*,
  134 S.Ct. 2618 (2014)............................................................................ 25

*Hartnett v. Penn. State Educ. Ass'n*,
  2019 WL 2160404 (M.D. Pa. May 17, 2019) ........................................... 8

*Hill v. SEIU*,
  850 F.3d 861 (7th Cir. 2017), *cert. denied*, 138 S.Ct. 446 (2017).......................... 20

*Ind v. Colo. Dep't of Corr.*,
  801 F.3d 1209 (10th Cir. 2015) ......................................................... 8, 9

*Janus v. AFSCME Council 31*,
  138 S.Ct. 2448 (2018)................................................................... passim

*Jarvis v. Cuomo*,
  660 F. App'x 72 (2d Cir. 2016), *cert. denied*, 137 S.Ct. 1204 (2017)...................... 20

*Jordan v. Sosa*,
  654 F.3d 1012 (10th Cir. 2011) .............................................................. 9

*Kidwell v. Transp. Commc'ns Int'l Union*,
  946 F.2d 283 (4th Cir. 1991) ................................................................ 10

*Knight v. Minn. Cmty. Coll. Faculty Ass'n*,
  460 U.S. 1048 (1983)............................................................................ 23

iv

*Lamberty v. Conn. St. Police Union*,
    2018 WL 5115559 (D. Conn. Oct. 19, 2018) ........................................................ 9

*Lee v. Ohio Educ. Ass'n*,
    366 F.Supp.3d 980 (N.D. Ohio 2019)..................................................................... 9

*Lehnert v. Ferris Faculty Ass'n*,
    500 U.S. 507 (1991)................................................................................................ 22

*Lugar v. Edmondson Oil Co.*,
    457 U.S. 922 (1982)................................................................................................ 17

*Mentele v. Inslee*,
    916 F.3d 783 (9th Cir. 2019) ..................................................................... 20, 25, 27

*Minnesota State Board for Community Colleges v. Knight*,
    465 U.S. 271 (1984)......................................................................................... passim

*NLRB v. U.S. Postal Serv.*,
    827 F.2d 548 (9th Cir. 1987) ................................................................................. 11

*Reisman v. Assoc. Faculties*,
    356 F.Supp.3d 173 (D. Me. 2018) .................................................................... 20, 27

*Schaffer v. Salt Lake City Corp.*,
    814 F.3d 1151 (10th Cir. 2016) ......................................................................... 19, 20

*Sigmon v. Community Care HMO*,
    234 F.3d 1121 (10th Cir. 2000) ............................................................................. 19

*Smith v. Ark. State Highway Emps. Local 1315*,
    441 U.S. 463 (1979)................................................................................................ 23

*Smith v. Super. Ct., Cty. of Contra Costa*,
    2018 WL 6072806 (N.D. Cal. Nov. 16, 2018) .................................... 11, 15, 16, 17

*Thompson v. Marietta Educ. Ass'n*,
    2019 WL 1650113 (S.D. Ohio Jan. 14, 2019) ....................................................... 20

*Uradnik v. Inter Faculty Org.*,
    2018 WL 4654751 (D. Minn. Sept. 27, 2018), *aff'd*, No. 18-3086 (8th Cir. Dec. 3,
    2018), *cert. denied*, No. 18-719 (Apr. 29,  2019) ................................................. 20

*Wessel v. City of Albuquerque*,
    299 F.3d 1186 (10th Cir. 2002) ............................................................................. 16

*Wholean v. CSEA SEIU Local 2001*,
    2019 WL 1873021 (D. Conn. Apr. 26, 2019)........................................................... 9

*Winsness v. Yocom*,
    433 F.3d 727 (10th Cir. 2006) ................................................................................. 8

*Yohn v. Cal. Teachers Ass'n*,
   2018 WL 5264076 (C.D. Cal. Sept. 28, 2018) ........................................................ 9

**State Court Cases**

*Branch v. Commonwealth Emp't Relations Bd.*,
   481 Mass. 810 (2019) ........................................................................................ 9, 27

*Callahan v. N.M. Fed'n of Teachers - TVI*,
   139 N.M. 201, 131 P.3d 51 (2006) ......................................................................... 21

*Mont. Fed'n of Pub. Emps. v. Vigness*,
   No. DV 19-0217 (Mont. 13th Dist. Yellowstone Cty. Apr. 11, 2019) .................... 16

**Administrative Decisions**

*In re AFSCME Local 3277 v. City of Rio Rancho*,
   PELRB Case No. 113-18 (Nov. 13, 2018)............................................................... 16

*NEA-Belen & Belen Fed'n of Sch. Emps. v. Belen Consolidated Schs.*,
   Case Nos. CP 38-49 (SD), CP 46-93(SD) (1994)................................................... 26

**Federal Statutory Authorities**

5 U.S.C. § 7115(a)-(b) ................................................................................................. 12

29 U.S.C. § 186(c)(4) .................................................................................................. 12

39 U.S.C. § 1205.......................................................................................................... 13

42 U.S.C. § 1983................................................................................................ 2, 10, 17

**State Statutory Authorities**

NMSA 1978, § 10-7E-2 ............................................................................................... 26

NMSA 1978, § 10-7E-5................................................................................. ......... 18, 21

NMSA 1978, § 10-7E-9(G) ........................................................................................... 8

NMSA 1978, §§ 10-7E-14 ........................................................................................... 21

NMSA 1978, § 10-7E-15(A) .................................................................................... 2, 21

NMSA 1978, § 10-7E-15(B) ........................................................................................ 21

NMSA 1978, § 10-7E-16.............................................................................................. 21

NMSA 1978, § 10-7E-17.............................................................................................. 27

NMSA 1978, § 10-7E-17(C)........................................................................................ 19

NMSA 1978, §§ 10-7E-19 ..................................................................................... 17, 21

NMSA 1978, §§ 10-7E-19(B) ...................................................................................... 18

NMSA 1978, §§ 10-7E-19(D) ...................................................................................... 18

NMSA 1978, §§ 10-7E-20 ................................................................................................... 17, 21

**Federal Rules and Regulations**

Fed. R. Civ. P. 56 ........................................................................................................... 1

**DEFENDANT AFSCME COUNCIL 18'S MOTION FOR SUMMARY JUDGMENT**

Defendant American Federation of State, County, and Municipal Employees Council 18 ("AFSCME" or "the Union") hereby moves for summary judgment on all claims for relief asserted in Plaintiff Brett Hendrickson's First Amended Complaint ("FAC") (Dkt. 21). This Motion should be granted pursuant to Fed. R. Civ. P. 56 because there are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law. This Motion is based on the accompanying Statement of Undisputed Material Facts, Memorandum of Points and Authorities, Affidavit of Connie Derr, Declaration of Joseph Grodin, the complete files and records of this action, and such other evidence or argument as the Court may hear.

## INTRODUCTION

Plaintiff Brett Hendrickson voluntarily signed an AFSCME membership agreement, in which he authorized the deduction of union dues from his pay, and which was only revocable during the first two weeks of December each year. Plaintiff now alleges that the enforcement of his voluntary membership and dues deduction agreement violated his First Amendment rights not to associate with the Union. He also alleges that the state statute that, prior to *Janus v. AFSCME Council 31*, 138 S.Ct. 2448 (2018), authorized fair share fees to be charged to non-union members but is no longer being enforced, somehow violates his First Amendment rights. Plaintiff has no viable claims, so summary judgment should be granted for AFSCME.

First, Plaintiff's claims for prospective relief related to the collection of dues and the dues revocation window are all moot. It is undisputed that the Union processed his resignation in December 2018 (during the revocation window stated in his membership contract), and that the State ceased Plaintiff's dues deductions. He is no longer subject to dues or dues payment policies, and there is no reason to think that he will be in the future. Therefore, there is no

further relief that this Court may give Plaintiff.  Similarly, his claims for prospective relief relating to fair share fees are moot because it is undisputed that the State and the Union permanently stopped collection of fair share fees from nonmembers after *Janus* held they are unconstitutional.

Second, Plaintiff's claim under 42 U.S.C. § 1983 for the reimbursement of his paid dues is barred by the valid and enforceable private contract between him and the Union.  "[T]he First Amendment does not confer . . . a constitutional right to disregard promises that would otherwise be enforced under state law."  *Cohen v. Cowles Media Co*., 501 U.S. 663, 672 (1991).  As every court to consider the issue has concluded, nothing in *Janus* undermines this longstanding precedent.  Although the foregoing is dispositive, this claim also fails for want of state action.

Plaintiff also challenges the system of exclusive-representation collective bargaining established by the State of New Mexico, NMSA 1978 § 10-7E-15(A).  However, this claim is foreclosed by *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984).  Every court to consider the issue, both before and after *Janus*, has ruled that exclusive-representation collective bargaining does not violate the First Amendment.  Therefore, AFSCME Council 18 is entitled to judgment as a matter of law on each of Plaintiff's claims in the FAC.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.  Plaintiff Brett Hendrickson is an employee of the New Mexico Human Services Department.  FAC, ¶ 3.

2.  At all relevant times, AFSCME Council 18 has been the democratically elected exclusive bargaining representative for purposes of the Public Employee Bargaining Act ("PEBA"), NMSA 1978, § 10-7E-1 *et seq*., of a bargaining unit consisting of certain employees of the State of New Mexico in numerous departments, including the Human Services Department.  Affidavit

2

of Connie Derr ("Derr Aff."), ¶ 3; FAC, ¶ 11.

3.  After bargaining unit employees elected AFSCME as their collective bargaining

representative in 2003, Plaintiff, who was in the bargaining unit, had the option to join the Union

as a member and receive membership rights and benefits in exchange, or to decline to join the

Union.  FAC, ¶ 16; Derr Aff., ¶ 35.  Plaintiff chose membership.  Derr Aff., ¶ 30.

4.  Prior to June 27, 2018, the collective bargaining agreement ("CBA") between the State

and AFSCME required nonmembers in the bargaining unit to pay fair share fees to help cover

the cost of the Union's collective-bargaining-related services on their behalf.  Derr Aff., ¶ 62.

5.  The fair share fee varied from year to year but was less than full union dues.  Derr Aff., ¶

63; FAC, ¶ 22.

6.  Plaintiff signed a union membership agreement and dues deduction authorization on May

7, 2004.  Derr Aff., ¶ 36, Ex. 2.

7.  From about July 2006 to March 2007, Plaintiff was moved to a non-bargaining unit

position and therefore was not a union member during this time.  Plaintiff did not pay union dues

or fair share fees during this period.  FAC, ¶ 17; Derr Aff., ¶ 38.

8.  After he returned to a bargaining unit position, Plaintiff rejoined the Union by signing a

second membership agreement and authorization for dues deduction on March 8, 2007.  FAC, ¶

20; Derr Aff., ¶ 39, Ex. 2.

9.  Plaintiff signed a third membership agreement and authorization for dues deduction on

April 7, 2017.  Derr Aff., ¶ 40, Ex. 3.  The agreement he signed states:

> Effective 4/7/17, I authorize AFSCME Council 18 as my exclusive bargaining
> representative, and I accept membership in AFSCME Council 18.  I request and
> authorize the State of New Mexico to deduct union dues from my pay and transmit
> them to AFSCME Council 18.  The amount of dues deduction shall be the amount

3

approved by AFSCME's membership as set forth in the AFSCME constitution and certified in writing to my employer. This authorization shall be revocable only during the first two weeks of every December, or such other time as provided in the applicable collective-bargaining agreement.

10. By choosing to become union members, workers obtain rights and benefits that are not enjoyed by nonmembers, such as the right to vote on ratification of a CBA, to serve on bargaining committees, to vote in union elections, and to run for union office, and access to various members-only benefits. Derr Aff., ¶ 7.

11. The State has never required membership in the Union as a condition of public employment. Bargaining unit employees have never been required to publicly endorse the Union's positions in any respect. Derr Aff., ¶¶ 6, 29.

12. The State plays no role in drafting or setting the terms of AFSCME's membership agreements that its members sign to join the Union. Derr Aff., ¶ 9.

13. After the Supreme Court issued *Janus* on June 27, 2018, the State and the Union immediately and permanently stopped collecting any fair share fees from nonmembers within the bargaining unit. Derr Aff., ¶¶ 64-71, Exs. 13-16. The State and the Union have explicitly agreed that, in light of *Janus*, the CBA provisions pertaining to fair share fees are void. *Id.* ¶ 71. These provisions have also been voided by operation of the CBA's savings clause. *Id.* ¶ 70, Ex. 17 (""If any Article, section or provision of this Agreement is found to be invalid, unenforceable, or no longer appropriate by any board or court of competent jurisdiction, the specific Article, section or provision shall cease to be in effect.").

14. Except for when Plaintiff was outside of the bargaining unit, the State deducted membership dues for him each month from March 2004 to December 2018 and remitted those dues to the Union, pursuant to his dues authorization agreements. FAC, ¶ 21; Derr Aff., ¶ 41.

4

15. Plaintiff could resign his union membership at any time but, under the terms of his membership agreement, dues would continue to be deducted from his paycheck until he revoked his dues deduction in writing to AFSCME and the State during the first two weeks of December. Derr Aff., ¶ 44; FAC, ¶ 59.

16. Defendant assumes the following facts are true for purposes of this summary judgment motion only:

    a.  On August 9, 2018, Plaintiff emailed the State Personnel Office ("SPO") "asking whether he could withdraw immediately as a union member or had to wait until a certain time window to withdraw."  FAC, ¶ 25.

    b.  On August 9, 2018, SPO responded that the collective bargaining agreement controlled when Plaintiff could withdraw as a member of the Union.  FAC, ¶ 26.

17.  AFSCME was not contacted by Plaintiff or the State in August 2018 regarding this email exchange.  Derr Aff., ¶ 43.

18. Plaintiff did not contact AFSCME regarding his desire to resign from the Union or terminate dues deductions before filing the complaint in this action.  Derr Aff., ¶ 43.

19. On November 30, 2018, Plaintiff filed the original complaint in this case.  Dkt. 1.

20. Pursuant to the terms of the membership agreement that Plaintiff signed and the CBA, the two-week dues revocation period was open from December 1-14, 2018.  Derr Aff., ¶ 46 & Ex. 3.

21.  On December 6, 2018, AFSCME executive director Connie Derr wrote a letter to Plaintiff on behalf of AFSCME, stating:

> It has come to our attention through the filing of a lawsuit that you wish to resign your union membership and cancel your authorization for the deduction of membership dues.  We have no prior record that you made any such request to the union.  Nevertheless we have processed your resignation from membership.

> Additionally, your dues authorization provides that it is revocable during the first two weeks of December each year. Accordingly, we are notifying your employer to stop further membership deductions.

Derr Aff., ¶ 48, Ex. 5.

22. On December 8, 2018, Plaintiff also faxed a membership withdrawal letter to AFSCME. Derr Aff., ¶ 49, Ex. 6.

23. Pursuant to Connie Derr's December 6, 2018 letter (and Plaintiff's December 8, 2018 membership withdrawal letter), the Union changed its records to reflect that Plaintiff is a nonmember. Because fair share fee collection had terminated by that point, Plaintiff never paid fair share fees. Derr Aff., ¶¶ 48, 60.

24. On January 3, 2019, Connie Derr emailed SPO to notify the State that Plaintiff had canceled his dues deduction authorization, and attached his membership withdrawal letter. Derr Aff., ¶ 50, Ex. 7; FAC, ¶ 36.

25. Defendant accepts as true the following facts for purposes of this summary judgment motion only:

    a. On January 7, 2019, Plaintiff emailed SPO "requesting, once again, to stop having Union dues deducted from his paycheck, attaching the December 6, 2018 letter, in which the Union had told Hendrickson it would notify his employer." FAC, ¶ 37.

    b. On January 8, SPO responded via email "that it would not process his request to stop having Union dues deducted from his paychecks because it had not received notification to do so within the two-week window." FAC, ¶ 38.

    c. "On January 8, Hendrickson sent yet another letter to the Department to request to stop his Union dues deduction." FAC, ¶ 39.

26.  On January 9, 2019, SPO emailed Connie Derr, stating that it could not process Plaintiff's dues revocation because it had no record that he made his request to management within the revocation period.  Derr Aff., ¶ 52, Ex. 8.

27.  On January 10, 2019, Connie Derr emailed SPO requesting that it "cease dues deductions for Hendrickson immediately."  Derr Aff., ¶ 53, Ex. 9.

28.  On January 16, 2019, Connie Derr emailed SPO again to follow up on her request that the State terminate Plaintiff's dues deductions.  Derr Aff., ¶ 54, Ex. 10.

29. The State ceased deducting dues from Plaintiff's paychecks beginning with the second pay period in January.  FAC, ¶ 42; Derr Aff., ¶¶ 56, 58.

30. Between the time Plaintiff's window period to cancel deductions closed and the time the State ceased dues deductions, the State deducted dues from his wages from the second pay period in December 2018 ($16.84) and the first pay period of January 2019 ($17.12).  FAC, ¶¶ 35, 40; Derr Aff., ¶ 55.

31. On January 29, 2019, Connie Derr wrote to Plaintiff via letter, stating: "[AFSCME] received your request to drop your dues deduction.  We notified [SPO] to discontinue the deduction.  Your deduction terminated with the last pay period of December 2018.  If the dues deduction continued after that pay period, [AFSCME] will refund that amount."  Derr Aff., ¶ 57, Ex. 12; FAC, ¶ 41.

32. In February 2019, AFSCME reimbursed Plaintiff $33.96 for the dues deducted after the first pay period of December 2018.  Derr Aff., ¶ 59; FAC, ¶ 44.

33. At the present time, Plaintiff is not an AFSCME member and is not required to support the Union, financially or otherwise.  Derr Aff., ¶ 60; FAC, ¶¶ 10, 41, 42.

34. All the work the Union does as the exclusive representative of the state employee bargaining unit costs money.  The dues deduction revocation agreement, by which members agree to pay dues for a certain period of time irrespective of union membership, helps guard against financial volatility and allows the Union to make long-term financial commitments for the benefit of workers.  AFSCME Council 18 budgets on an annual basis, and projects revenues based on the number of signed member cards.  Derr Aff., ¶¶ 11-14.

## ARGUMENT

### I.   Plaintiff's claims for prospective relief against fair share fees are not justiciable.

Plaintiff seeks declaratory and injunctive relief against NMSA 1978, § 10-7E-9(G) and any other state laws that authorize fair share fees.  FAC, ¶ 60; *id.* at 14 ¶ h.  This claim does not present a live controversy.  All fair share fee deductions were terminated when *Janus* issued, Statement Of Facts ("SOF"), ¶ 13, and there is no reasonable likelihood that they will resume because *Janus* declared fair share fees unconstitutional.  Claims for prospective relief are moot when such relief would not "have some effect in the real world."  *Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1213 (10th Cir. 2015) (internal quotation marks omitted).  And "[i]t is . . . not necessary (and in light of . . . Article III, generally not permissible) for courts to issue redundant rulings on the constitutionality of indistinguishable statutes" unless there is a reasonable likelihood they will be enforced.  *Winsness v. Yocom*, 433 F.3d 727, 728 (10th Cir. 2006).  Thus, as every court to consider this issue has concluded, post-*Janus* demands like Plaintiff's for injunctive and declaratory relief against fair share fees do not present a live controversy when fair share fees have already ended because of *Janus*.[1]

---

[1] *See Hartnett v. Penn. State Educ. Ass'n*, 2019 WL 2160404, at *6 (M.D. Pa. May 17, 2019); *Babb v. Cal. Teachers Ass'n*, --- F.Supp.3d ---, 2019 WL 2022222, at *4-5 (C.D. Cal. May 8,

II.     **Plaintiff's claims for prospective relief against dues deductions and the dues revocation window are not justiciable.**

Plaintiff also seeks prospective relief against the deduction of membership dues and the dues revocation window.  FAC ¶¶ 58, 59; *id.* at 13 ¶¶ a-e, 14 ¶ i.  These claims also fail because there is no live case or controversy for this Court to decide.

Plaintiff is no longer a union member and is no longer subject to dues or any terms related to dues payments.  *See* SOF, ¶¶ 23, 29, 33.  There is no reasonable likelihood that he will be subject to membership dues or any dues payment policies again.  For the same reasons just stated above, there is no further prospective relief that this Court may grant Plaintiff with respect to his claims against the collection of member dues or other dues payment terms.  Accordingly, his claims are moot.  *Ind*, 801 F.3d at 1211 (holding that transfer of inmate resulting in him no longer being subject to challenged prison policy mooted his claims for prospective relief); *see also Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) ("A claim for equitable relief is moot absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." (citation omitted)).  As one other district court explained in identical circumstances, "because the

---

2019) (ruling in five related cases); *Wholean v. CSEA SEIU Local 2001*, 2019 WL 1873021, at *2-3 (D. Conn. Apr. 26, 2019); *Akers v. Md. State Educ. Ass'n*, --- F.Supp.3d ---, 2019 WL 1745980, at *4-5 (D. Md. Apr. 18, 2019); *Bermudez v. SEIU Local 521*, 2019 WL 1615414, at *1 (N.D. Cal. Apr. 16, 2019); *Berman v. N.Y. State Pub. Emp. Fed'n*, 2019 WL 1472582, at *3-4 (E.D.N.Y. Mar. 31, 2019); *Lee v. Ohio Educ. Ass'n*, 366 F.Supp.3d 980, 981-82 (N.D. Ohio 2019); *Carey v. Inslee*, 364 F.Supp.3d 1220, 1225-27 (W.D. Wash. 2019); *Cook v. Brown*, 364 F.Supp.3d 1184, 1188-90 (D. Or. 2019); *Babb v. Cal. Teachers Ass'n*, 2018 WL 7501267, at *1 (C.D. Cal. Dec. 7, 2018); *Danielson v. AFSCME Council 28*, 340 F.Supp.3d 1083, 1084 (W.D. Wash. 2018); *Lamberty v. Conn. St. Police Union*, 2018 WL 5115559, at *8-9 (D. Conn. Oct. 19, 2018); *Yohn v. Cal. Teachers Ass'n*, 2018 WL 5264076, at *3-4 (C.D. Cal. Sept. 28, 2018); *Branch v. Commonwealth Emp't Relations Bd.*, 481 Mass. 810, 815-19 (2019).

plaintiffs are no longer members of [the union], they don't have standing to sue for an injunction

to change the union's [dues] termination policies[.]"  *Bermudez*, 2019 WL 1615414, at *1.[2]

Therefore, AFSCME is entitled to summary judgment as to Plaintiff's claims for declaratory and

injunctive relief.

## III.  The enforcement of Plaintiff's own voluntary dues authorization agreements does not violate his First Amendment rights.

Plaintiff seeks reimbursement of the membership dues he paid since "the commencement

of his employment" or alternatively "since the *Janus* decision on June 27, 2018."  FAC, at 13 ¶¶

f-g.  He brings this claim under 42 U.S.C. § 1983 on the alleged grounds that his dues deductions

and the revocation window violate the First Amendment to the U.S. Constitution.  However,

Plaintiff's § 1983 claim must fail because all the union dues he paid throughout his employment

with the State were pursuant to his valid and enforceable contract with another private party – the

Union.  Unlike the plaintiff in *Janus*, Hendrickson has only ever paid to the Union what he

voluntarily agreed to pay.  *See Kidwell v. Transp. Commc'ns Int'l Union*, 946 F.2d 283, 292-93

(4th Cir. 1991) ("Where the employee has a choice of union membership and the employee

chooses to join, the union membership money is not coerced.  The employee is a union member

voluntarily.").

---

[2] This Court can quickly dispose of Plaintiff's request for an injunction on behalf of other public employees who attempted to revoke their dues deduction authorizations prior to the revocation window.  FAC, at 13 ¶¶ d-e.  "A plaintiff must assert his own rights, rather than those belonging to third parties."  *Begay v. Pub. Serv. Co. of N.M.*, 710 F.Supp.2d 1161, 1186-87 (D.N.M. 2010).  Hendrickson is the sole plaintiff in this suit and does not plead a class action.  Accordingly, he cannot assert the rights of third parties not before this Court.  For the same reason, Plaintiff's attempt to avoid mootness by alleging that "[t]he Union continues to deduct dues from other employees in Hendrickson's situation," FAC, ¶ 57, fails to save his claim.

### A.  Plaintiff's voluntary membership agreements constitute binding contracts.

Plaintiff's conclusory allegation that he did not give "affirmative consent" to joining

AFSCME and paying membership dues, *see, e.g.*, FAC, ¶ 56, is flatly contradicted by the

undisputed facts in the record.  Plaintiff affirmatively consented to join the Union by signing

several binding contractual agreements over the course of his employment to pay yearly dues in

exchange for access to union member rights and benefits.  SOF, ¶¶ 6-10.  By signing these

agreements, Plaintiff also knowingly agreed that his dues deduction authorization would be

revocable only during the revocation window.  *Id.* ¶ 9.[3]  The agreement is clearly visible, written

in large font and plain language on the cards that Plaintiff signed.  *See* Derr Aff., Ex. 4.

Plaintiff's membership agreements and dues deduction authorizations are binding

contracts between himself and AFSCME.  *See Adams v. Int'l Bhd. of Boilermakers*, 262 F.2d

835, 838 (10th Cir. 1958) ("It is well settled that the relationship between a . . . union and its

members is contractual."); *see also NLRB v. U.S. Postal Serv.*, 827 F.2d 548, 554 (9th Cir. 1987)

(dues-deduction authorization is a contract); *Smith v. Super. Ct., Cty. of Contra Costa*, 2018 WL

6072806, at *1 (N.D. Cal. Nov. 16, 2018) (plaintiff who signed membership agreement "formed

a contract with [the union] in which he agreed to pay dues for a year"); *Belgau v. Inslee*, 2018

WL 4931602, at *5 (W.D. Wash. Oct. 11, 2018) ("[T]he Plaintiffs entered into a contract with

the Union to be Union members and agreed in that contract to pay the Union dues for one

year."); *Fisk v. Inslee*, 2017 WL 4619223, at *4 (W.D. Wash. Oct. 16, 2017), *aff'd mem.*, 759 F.

---

[3] Hence, the uncontroverted evidence that the Union collected dues from him pursuant to his
voluntary membership agreements dispels Plaintiff's conclusory assertion that the Union
collected dues from him "pursuant to a collective bargaining agreement negotiated with [the]
state." FAC, ¶ 53.  The CBA here merely tracks the language of union members' agreements –
including Plaintiff's own membership contract.

11

App'x 632, 633 (9th Cir. 2019) (signed card with dues authorization agreement was "a valid contract").

The revocation window serves important purposes.  All of the work that the Union does as the exclusive representative for the bargaining unit (such as, bargaining, grievance resolution, and worker advocacy), costs money.  SOF, ¶ 34; Derr Aff., ¶ 11.  Hence, a common contractual provision in organized labor is an agreement whereby the member agrees to pay union dues for a specified term, irrespective of union membership.  Derr Aff., ¶ 11. These provisions help guard against financial volatility, and allows the Union to make long-term financial commitments for the benefit of the workers it represents.  SOF, ¶ 34; *Fisk*, 2017 WL 4619223, at *3 (period of irrevocability "provides [union] with financial stability" and allows union to "forecast how much revenue it will receive over a given year and budget accordingly" and to "make long-term financial commitments without the possibility of a sudden loss of revenue").  When AFSCME Council 18 prepares its budgets for the forthcoming year, it projects its revenue based on the number of signed member cards.  SOF, ¶ 34.  Recognizing that union members have the right to participate in important internal decisions, such as officer elections, that could significantly affect the Union, the dues commitment period also "prevents [members] who sign cards from gaming the Union's system of governance."  *Fisk*, 2017 WL 4619223, at *3.

Because they serve such important purposes, dues commitment agreements like Plaintiff's are common and have been endorsed by Congress several times.  Under the National Labor Relations Act ("NLRA"), covered employers may transmit to their employees' union:

> money deducted from the wages of employees in payment of membership dues in a labor organization: *Provided*, That the employer has received from each employee, on whose account such deductions are made, a written assignment *which shall not be irrevocable for a period of more than one year*, or beyond the termination date of the applicable collective agreement, whichever occurs sooner.

29 U.S.C. § 186(c)(4) (second emphasis added); *see also* 5 U.S.C. § 7115(a)-(b) (Railway Labor

Act); 39 U.S.C. § 1205 (Postal Service employees).  Plaintiff is not unique among the millions of

workers who have signed similar agreements; if Plaintiff's theory were valid, it would eradicate

each of those agreements and undermine foundational principles of federal labor law.  This Court

should not accept his invitation to contradict numerous other courts in its sister jurisdictions in

granting his requested relief.  *See supra*, 11-12; *infra*, 14-15.

    **B.  The First Amendment does not provide Plaintiff a right to breach his voluntary contractual obligations.**

    Plaintiff's claims rest on his asserted constitutional "right" to join the Union on his own

chosen financial terms or to renege on his voluntary contractual commitments.  FAC, ¶¶ 54, 56.

No such right exists.

    Plaintiff has been an AFSCME member since 2003, except for a period when he was

outside of the bargaining unit.  SOF, ¶¶ 3, 6-9.  Plaintiff signed his most recent membership

agreement and authorization for dues deduction on April 7, 2017, in which he agreed to

"authorize the State of New Mexico to deduct union dues from [his] pay and transmit them to

AFSCME" and that "this authorization shall be revocable only during the first two weeks of

every December, or such other time as provided in the applicable collective-bargaining

agreement."  *Id.* ¶ 9.  Plaintiff could have chosen to become a fair share fee payer, but instead he

chose union membership.  *Id.* ¶ 3.  Neither the State nor AFSCME has ever required joining the

Union as a condition of employment.  *Id.* ¶¶ 3, 11.

    The Supreme Court in *Cohen v. Cowles Media Co.* established that there is no First

Amendment right to renege on private voluntary agreements, even when those agreements

implicate the First Amendment.  501 U.S. at 672 ("[T]he First Amendment does not confer . . . a

constitutional right to disregard promises that would otherwise be enforced under state law.").

There, the Court rejected a claim that the First Amendment prohibited enforcement of a

newspaper's promise not to reveal the identity of a confidential source. *Id.* at 666-70. The Court

recognized that the doctrine of promissory estoppel simply "requires those who make certain

kinds of promises to keep them," *id.* at 672, and, therefore, the application of state promissory

estoppel law to the newspaper's promise did not "offend the First Amendment," *id.* at 669.

   As in *Cohen*, the State's function here is solely to enforce Plaintiff's own affirmative

agreements to authorize dues deductions with a revocation window. In granting summary

judgment for the defendants against claims analogous to Hendrickson's, the district court in *Fisk*

explained:

> The freedom of speech and the freedom of association do not trump the obligations
> and promises voluntarily and knowingly assumed. The other party to that contract
> has every reason to depend on those promises for the purpose of planning and
> budgeting resources. The Constitution says nothing affirmative about reneging
> legal and lawful responsibilities freely undertaken.

2017 WL 4619223, at *5.

   Every court to consider the issue has rejected arguments indistinguishable from

Plaintiff's, and ruled that union members' agreements to pay dues and associated dues deduction

revocation terms do not implicate the First Amendment. Again, the court's reasoning in *Fisk* is

instructive:

> A worker has every right to voluntarily associate with a union in order to promote
> better working conditions and wages. Correspondingly, a worker can refuse to
> associate with or join a union. That is her prerogative. But, once she joins
> voluntarily, in writing, she has the obligation to perform the terms of her agreement.
> The freedom of speech and the freedom of association do not trump the obligations
> and promises voluntarily and knowingly assumed.

*Id.*; *see also Fisk*, 759 F. App'x at 633 (affirming district court) (holding that union's "deduction

14

of union dues in accordance with the membership cards' dues irrevocability provision does not

violate Appellants' First Amendment rights" (citing *Cohen*, 501 U.S. at 668-71)); *see also Babb*,

2019 WL 2022222, at *9; *Bermudez*, 2019 WL 1615414, at *2; *Crockett v. NEA Alaska*, 367

F.Supp.3d 996, 1007-08 (D. Alaska 2019); *Cooley v. Cal. Statewide Law Enf't Ass'n*, 2019 WL

331170, at *3 (E.D. Cal. Jan. 25, 2019); *Smith*, 2018 WL 6072806, at *1; *Belgau*, 2018 WL

4931602, at *5.  These decisions are correct and should be followed here.

### C. *Janus* does not undermine pre-*Janus* union membership and dues deduction agreements.

Plaintiff's assertion that "[u]nion dues deduction agreements signed in jurisdictions that

required agency fees before the Supreme Court's decision in *Janus* are no longer enforceable,"

FAC, ¶ 2, is wrong.  *Janus* did not change the law governing the formation and enforcement of

voluntary contracts between unions and their members, nor *Cohen*'s holding that voluntary

contracts are fully enforceable even when the First Amendment might have precluded the

government from requiring a party to engage in the same activity.  The plaintiff in *Janus* was a

*non*-member required to pay agency fees by the state statute, not a member who had

affirmatively chosen to enter into a contract to secure member benefits in exchange for paying

dues.  138 S.Ct. at 2460.  Every court to consider this issue has determined that *Janus* provides

no grounds for plaintiffs to renege on voluntary union membership agreements or any associated

terms.  *Babb*, 2019 WL 2022222, at *9 ("Plaintiffs voluntarily chose to pay membership dues in

exchange for certain benefits, and '[t]he fact that plaintiffs would not have opted to pay union

membership fees if *Janus* had been the law at the time of their decision does not mean their

decision was therefore coerced.'" (quoting *Crockett*, 367 F.Supp.3d at 1008)); *Bermudez*, 2019

WL 1615414, at *2 ("[P]laintiffs' claims for a refund of their membership dues fail ….  [T]he

15

decision to pay dues was not coerced and payment was a valid contractual term."); *Belgau v. Inslee*, 359 F.Supp.3d 1000, 1016 (W.D. Wash. 2019) ("*Janus* does not apply here – Janus was not a union member, unlike the Plaintiffs here, and Janus did not agree to a dues deduction, unlike the Plaintiffs here."); *Cooley*, 2019 WL 331170, at *2 ("Put simply, the relationship between unions and their voluntary members was not at issue in *Janus*."); *Smith*, 2018 WL 6072806, at *1 ("[I]t's not the rights clarified in *Janus* that are relevant to [plaintiff]."); Order, *Mont. Fed'n of Pub. Emps. v. Vigness*, No. DV 19-0217 at 9 (Mont. 13th Dist. Yellowstone Cty. Apr. 11, 2019) (*Janus*'s waiver provision "is limited to nonmembers' payment of fees") (attached as Ex. 1). Consistent with these authorities, the New Mexico Public Employee Labor Relations Board ("PELRB") rejected the argument that *Janus* invalidated current union members' dues authorizations agreed to before the Supreme Court decision issued. *In re AFSCME Local 3277 v. City of Rio Rancho*, PELRB Case No. 113-18 (Nov. 13, 2018) (attached as Ex. 2).

As these authorities establish, Plaintiff cannot manufacture a First Amendment claim by now asserting that he would have preferred to refuse the join the Union and pay nothing at the time the Union presented him with the membership agreement. *See* FAC, ¶ 56. At the time Plaintiff signed his membership agreements, the collection of fair share fees from bargaining unit members, minus the non-chargeable portion for objectors, was constitutional under then-binding Supreme Court and 10th Circuit precedent. *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 232 (1977); *Wessel v. City of Albuquerque*, 299 F.3d 1186, 1190-91 (10th Cir. 2002). Hendrickson's position is like the plaintiff's in *Smith*, who "argues his consent to pay wasn't 'knowing' before *Janus* because he couldn't yet have known or understood the rights the case would clarify he

had.  But it's not the rights clarified in *Janus* that are relevant to Smith – Smith's First

Amendment right to opt out of union membership was clarified in 1977 [by *Abood*]."  *Smith*,

2018 WL 6072806, at *1.  The same reasoning applies here.[4]

Because Plaintiff has not suffered a deprivation of any constitutional right, AFSCME is

entitled to summary judgment as to his § 1983 damages claim for dues deducted from him.

### D.  The terms of Plaintiff's voluntary union membership agreements do not constitute state action triggering First Amendment scrutiny.

The foregoing is dispositive of Plaintiff's § 1983 claim for damages relating to his dues

deductions.  However, Plaintiff's claim lacks merit for the additional reason that he cannot

establish "that the conduct allegedly causing the deprivation of a federal right [is] fairly

attributable to the State."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  To determine

whether a private defendant's conduct is "fairly attributable to the State," a plaintiff must show

(1) a "deprivation . . . caused by the exercise of some right or privilege created by the State or by

a rule of conduct imposed by the state or by a person for whom the State is responsible"; and (2)

that the defendant can "fairly be said to be a state actor."  *Id.*  Both prongs must be satisfied to

hold a private party liable under § 1983.  *Id.* at 937-39.  Here, neither prong is satisfied.

The court's first task in the state-action inquiry is to "identify[] the specific conduct of

---

[4] Moreover, Plaintiff's subjective belief that he needed to join the Union in order to avoid some financial penalty, *see* FAC, ¶ 19, does not give rise to a § 1983 claim either.  Regardless of whether Plaintiff "felt coerced," *id.*, he does not allege that the Union, Governor Lujan Grisham, or Attorney General Balderas coerced or misled him, much less that he was "coerced" by any state policy.  Indeed, New Mexico law clearly prohibits such coercion on the part of public employers and unions.  NMSA 1978, §§ 10-7E-19, 10-7E-20.  And so, even if Defendants *had* coerced or misled Plaintiff into joining the Union, his § 1983 claim would still fail because there is no state action when individuals "act[] contrary" to state law.  *See Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 940 (1982).  In any event, Plaintiff's sole remedy for such alleged coercion would be with the PELRB.

which the plaintiff complains." *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999)

(internal quotation marks omitted).  Here, the conduct complained of is the collection of union

dues subject to a revocation window period.  FAC, ¶¶ 53, 55, 58.  However, the State did not

require Plaintiff to join the Union as a condition of public employment.  SOF, ¶ 11.  Plaintiff has

a statutorily protected "right to refuse" to "form, join or assist" a union.  NMSA 1978, § 10-7E-

5.  The State is prohibited from "interfer[ing] with, restrain[ing], or coerc[ing]" Plaintiff in "the

exercise of [that] right," nor can it discriminate against Plaintiff because of his membership

status with a union.  *Id.* §§ 10-7E-19(B), (D).  The State had no role in drafting or setting the

terms of Plaintiff's private dues deduction and revocation agreement with AFSCME.  SOF, ¶ 12.

The only role the State played was deducting the dues authorized by Plaintiff's agreement.  *Id.* ¶

14.

   In analogous circumstances, the *Belgau* court rejected the argument that state employees'

union membership agreements which made their dues authorizations non-revocable for one year

violated the First Amendment.  *Belgau*, 359 F.Supp.3d at 1012-15.  The court held there was no

state policy as required to make out a § 1983 claim because the plaintiffs' union membership

agreements were not "in any way attributable to the State"; "the Union, a private entity, asked

the Plaintiffs to sign them"; and neither the state law authorizing deductions nor the parties'

CBA dictated the terms of those agreements.  *Id.* at 1012; *see also Bain v. Cal. Teachers Ass'n*,

156 F.Supp.3d 1142, 1152-53 (C.D. Cal. 2015), *appeal dismissed as moot*, 891 F.3d 1206 (9th

Cir. 2018) (unlike in cases involving compulsory fair share fees, union's conduct related to

membership agreements do not involve "compulsion . . . authorized by state law"; plaintiffs

could not "establish state action" based on the terms of their own voluntary union membership

agreements).  Likewise, here, the dues deduction subject to a limited revocation window that Plaintiff challenges, derives from his private contract with the Union and not from any state policy subject to constitutional scrutiny.[5]

Plaintiff also cannot satisfy the second prong of the state action analysis because AFSCME is not a state actor.  There are four tests for determining whether a private person's conduct amounts to state action: (1) public function; (2) joint action; (3) symbiotic relation; and (4) governmental nexus.  *Sigmon v. Community Care HMO*, 234 F.3d 1121, 1125 (10th Cir. 2000).  Plaintiff only alleges that the State and the Union engaged in joint action.  *See* FAC, ¶ 53 ("The Union acted in concert with [Governor] Lujan Grisham. . . . In doing so, the Union acted under color of state law.").[6]

AFSCME and the State were not joint actors.  "To apply the joint action test, courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights."  *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1157 (10th Cir. 2016).  "[C]oncerted action" may be found either when "the public and private actors . . . share a common unconstitutional goal," or when "there is a substantial degree of cooperative action between state and private officials" with "overt and significant state participation in the deprivation of a plaintiff's constitutional rights."  *Id.*

The State merely has a ministerial responsibility to honor the payroll deductions that employees have authorized.  NMSA 1978, § 10-7E-17(C).  This ministerial responsibility does

---

[5] As stated *supra* n.3, the terms of the CBA do not establish the state policy necessary to make out Plaintiff's claim, because the CBA merely parrots the language of the private membership and dues deduction agreements.

[6] Plaintiff cannot meet any of these tests.  To the extent Plaintiff relies on any of the other tests in his opposition, AFSCME will address those arguments in its reply.

not meet the required showing of "a substantial degree of cooperative action."  *Schaffer*, 814

F.3d at 1157.  The State's role in implementing dues deductions in accordance with Plaintiff's

agreement with the Union is solely "administrative" and does not suffice to implicate the State in

the Union's conduct under either the nexus or the joint-function test.  *See Blum v. Yaretsky*, 457

U.S. 991, 1004-05 (1982) (state's adjustment of patients' Medicaid benefits in response to

decisions about patients' discharge or transfer made by privately employed doctors was

insufficient to convert doctors' decisions into state action); *Belgau*, 359 F.Supp.3d at 1014.

Because there is no state action here, AFSCME is entitled to summary judgment as to Plaintiff's

§ 1983 damages claim for dues deducted from him.

## IV.   Binding Supreme Court precedent establishes that exclusive-representation collective bargaining does not implicate Plaintiff's First Amendment rights.

Count II of the FAC challenges the State's recognition of AFSCME as the democratically

chosen PEBA representative for Plaintiff's bargaining unit.  According to Plaintiff, exclusive-

representation collective bargaining, by itself, is a violation of the First Amendment.  That legal

claim is foreclosed by *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271

(1984), as every court to consider this issue – before and after *Janus* – has recognized.[7]

---

[7] *See Mentele v. Inslee*, 916 F.3d 783, 786-90 (9th Cir. 2019); *Bierman v. Dayton*, 900 F.3d 570, 574 (8th Cir. 2018), *cert. denied*, --- S.Ct. ---, 2019 WL 2078110 (May 13, 2019); *Hill v. SEIU*, 850 F.3d 861, 864-65 (7th Cir. 2017), *cert. denied*, 138 S.Ct. 446 (2017); *Jarvis v. Cuomo*, 660 F. App'x 72, 74 (2d Cir. 2016), *cert. denied*, 137 S.Ct. 1204 (2017); *D'Agostino v. Baker*, 812 F.3d 240, 242-44 (1st Cir. 2016), *cert. denied*, 136 S.Ct. 2473 (2016); *Grossman v. Haw. Gov't Emps. Ass'n/AFSCME Local 152*, --- F.Supp.3d ---, 2019 WL 2195206, at *2-3 (D. Haw. May 21, 2019); *Babb*, 2019 WL 2022222, at *18; *Akers*, 2019 WL 1745980, at *6; *Crockett*, 2019 WL 1212082, at *8; *Thompson v. Marietta Educ. Ass'n*, 2019 WL 1650113, at *3-8 (S.D. Ohio Jan. 14, 2019); *Reisman v. Assoc. Faculties*, 356 F.Supp.3d 173, 175-79 (D. Me. 2018); *Uradnik v. Inter Faculty Org.*, 2018 WL 4654751, at *2-4 (D. Minn. Sept. 27, 2018), *aff'd*, No. 18-3086 (8th Cir. Dec. 3, 2018), *cert. denied*, No. 18-719 (Apr. 29,  2019).

**A.  The exclusive representation provisions of PEBA do not infringe upon Plaintiff's constitutional rights.**

PEBA adopts the same democratic system of exclusive-representation collective bargaining that is essentially universal in the United States.  *See* Declaration of Joseph Grodin ("Grodin Decl."), ¶ 4.[8]  Under PEBA, designated units of public employees may, if they so choose, elect an "exclusive representative" by submitting proof of majority support or by majority vote in a secret ballot election.  PEBA also provides a process for employees to decertify or change representatives.  NMSA 1978, §§ 10-7E-14, 10-7E-16.  PEBA requires the chosen representative to "represent the interests of all public employees in the appropriate bargaining unit without discrimination or regard to membership in the labor organization."  *Id.* § 10-7E-15(A); *see also Callahan v. N.M. Fed'n of Teachers - TVI*, 139 N.M. 201, 205-06, 131 P.3d 51, 55-56 (2006).  PEBA further provides that public employees, "acting individually," may present a grievance to the public employer "without the intervention of the exclusive representative."  NMSA 1978, § 10-7E-15(B).

PEBA has never required bargaining unit employees to become union members.  To the contrary, PEBA makes it unlawful for public employers or majority-supported exclusive representatives to interfere with the rights of employees to form, join, and participate in the activities of employee organizations of their own choosing, *id.* §§ 10-7E-19, 10-7E-20, or to exercise their "right to refuse any such activities."  *Id.* § 10-7E-5.  The designation of AFSCME

---

[8] The citations in this section to the Grodin Declaration are not included in the Statement of Facts because, in light of *Knight* and the uniform body of law following *Knight* both before and after *Janus*, there is no reason for the Court to engage in constitutional scrutiny of the exclusive representation provisions of PEBA.

as the PEBA exclusive representative also does not preclude bargaining unit employees from speaking to and petitioning the government about issues of public concern, just like all other citizens, whether individually or through organizations of their own choosing.  *See Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 521 (1991) ("Individual employees are free to petition their neighbors and government in opposition to the union which represents them in the workplace."); *City of Madison, Joint Sch. Dist. No. 8 v. Wisc. Emp't Relations Comm'n*, 429 U.S. 167, 173-76 & n.10 (1976) (bargaining unit members have the same First Amendment rights as other citizens to speak in opposition to union); SOF, ¶ 11.  Moreover, after the Supreme Court's decision in *Janus*, public employees represented by labor unions who choose not to be members of those unions can no longer be required to provide any financial support to cover the costs of union representation.  138 S.Ct. at 2486.

The Supreme Court held in *Knight* that an indistinguishable system of exclusive representation "in no way restrained [non-union members'] freedom to speak … or their freedom to associate or not to associate with whom they please, including the exclusive representative." 465 U.S. at 288.  In that case, a group of Minnesota college instructors argued that the exclusive representation provisions of the state public employee labor relations law violated the First Amendment rights of instructors who did not wish to associate with the faculty union.  *Id.* at 273, 278-79.  The state law granted their bargaining unit's elected representative the exclusive right to "meet and negotiate" over employment terms.  *Id.* at 274-75.  Also, because instructors are professional employees, the state law granted the unit's representative the exclusive right to "meet and confer" with campus administrators about employment-related policy matters outside the scope of mandatory negotiations.  *Id.* at 274.

22

The lower court rejected the *Knight* plaintiffs' constitutional challenge with respect to exclusive representative status in the meet-and-negotiate process.  *See id.* at 278.  On appeal, the Supreme Court summarily affirmed the lower court's rejection of the *Knight* plaintiffs' "attack on the constitutionality of exclusive representation in bargaining over terms and conditions of employment."  *Id.* at 278; *Knight v. Minn. Cmty. Coll. Faculty Ass'n*, 460 U.S. 1048 (1983).  The district court ruled in favor of the *Knight* plaintiffs with respect to the meet-and-confer process. *See* 465 U.S. at 278-79.  On appeal, however, the Supreme Court reversed that portion of the district court's judgment with a full opinion, holding that the statute's exclusive representation provisions – even with respect to matters beyond terms of employment – did not infringe on First Amendment associational rights.  *Id.* at 288.

The *Knight* Court began its analysis by recognizing that government officials have no obligation to negotiate or confer with employees, and that the meet-and-confer process (like the meet-and-negotiate process) was not a "forum" to which plaintiffs had any First Amendment right of access.  *Id.* at 280-82.  The Court explained that plaintiffs (non-union members) also had no constitutional right "as members of the public, as government employees, or as instructors in an institution of higher education" to "force the government to listen to their views."  *Id.* at 283. The government, therefore, was "free to consult or not to consult whomever it pleases."  *Id.* at 285; *see also Smith v. Ark. State Highway Emps. Local 1315*, 441 U.S. 463, 464-66 (1979) (government did not violate speech or associational rights of union supporters by accepting grievances filed by individual employees while refusing to recognize union's grievances).

The *Knight* Court then went on to consider whether Minnesota's public employee labor relations act violated those First Amendment rights that non-members *could* properly assert –

23

namely, the right to speak and the right to "associate or not to associate."  465 U.S. at 288.  Non-members' speech rights were not infringed by Minnesota's system of exclusive representation because, while the exclusive representative's status "amplifie[d] its voice in the policymaking process," that amplification did not "impair[] individual instructors' constitutional freedom to speak."  *Id.*  As the Court explained, such amplification is "inherent in government's freedom to choose its advisers" and "[a] person's right to speak is not infringed when government simply ignores that person while listening to others."  *Id.*

The Supreme Court found no infringement of non-members' associational rights because they were "free to form whatever advocacy groups they like" and were "not required to become members" of the organization acting as the exclusive representative.  *Id.* at 289.  The Court acknowledged that non-members may "feel some pressure to join the exclusive representative" to serve on its committees and influence its positions.  *Id.* at 289-90.  But the Court held that this "is no different from the pressure to join a majority party that persons in the minority always feel."  *Id.* at 290.  Such pressure "is inherent in our system of government; it does not create an unconstitutional inhibition on associational freedom."  *Id.*

*Knight* thus considered whether exclusive representation, by itself, violates the speech or associational rights of public employees who are not members of the union that has been designated as their exclusive representative, and held that it does not do so – thereby foreclosing Plaintiff's claim in Count II.  *See id.* at 288 ("[T]he First Amendment guarantees the right both to speak and to associate.  Appellees' speech and associational rights, however, have not been infringed[.]"); *id.* at 290 n.12 (non-members' "speech and associational freedom have been wholly unimpaired").

24

Nothing in *Janus* altered this analysis.  Every court to consider this issue – before and after *Janus* – has found *Knight* controlling.  *See supra* n.7.  *Janus* held only that public employees who are not union members cannot be required to pay "fair share" or "agency" fees to an exclusive representative for collective bargaining representation.  *Janus* distinguished between compelled financial support for an exclusive representative and the underlying system of exclusive representation.  138 S.Ct. at 2465, 2467.  And *Janus* explained that, while fair share fees are unconstitutional, states can otherwise "keep their labor-relations systems exactly as they are," including by "requir[ing] that a union serve as exclusive bargaining agent for its employees."  *Id.* at 2478, 2485 n.27; *see also id.* at 2466, 2485 n.27 (states may "follow[] the model of the federal government," in which "a union chosen by majority vote is designated as the exclusive representative of all the employees"); *id.* at 2471 n.7 ("[W]e are not in any way questioning the foundations of modern labor law.").

Thus, *Janus* did not change settled precedent about exclusive-representation collective bargaining.  *See Mentele*, 916 F.3d at 789 ("[Plaintiff] argues that *Janus* overruled *Knight* and that *Janus* controls the outcome of this case, but we are not persuaded.  The cases presented different questions, . . . and *Janus* never mentions *Knight*."); *Bierman*, 900 F.3d at 574 ("Recent holdings in *Janus* . . . and *Harris v. Quinn*, [134 S.Ct. 2618 (2014)], do not supersede *Knight*." (citations omitted)).

### B.     Exclusive representation bargaining serves compelling state interests.

For the reasons just discussed, exclusive-representation collective bargaining does not infringe upon Plaintiff's First Amendment rights, so no constitutional scrutiny is triggered.  Even

if such analysis were required, New Mexico's exclusive-representative system would survive
that scrutiny.

As *Janus* acknowledged, states have a "compelling . . . interest" in organizing labor
relations with their public-sector employees through a system of exclusive-representation
collective bargaining in order to achieve "labor peace" and avoid "the conflict and disruption that
. . . would occur if the employees in a unit were represented by more than one union."  138 S.Ct.
at 2465.

New Mexico adopted PEBA to serve compelling interests in "promot[ing] harmonious
and cooperative relationships between public employers and public employees and . . .
protect[ing] the public interest by ensuring, at all times, the orderly operation and functioning of
the state and its political subdivisions."  NMSA 1978, § 10-7E-2; *see also NEA-Belen & Belen
Fed'n of Sch. Emps. v. Belen Consolidated Schs.*, Case Nos. CP 38-49 (SD), CP 46-93(SD), at 3-
4 (1994) (stating "the principle of 'efficient administration of government'" "requires striking a
balance between public employees' rights to self-determination and public employers' rights to
maintain stability"; preventing employees from fragmenting bargaining units in order to protect
government efficiency and stability) (attached as Ex. 3).

An exclusive-representation system is necessary to achieve these goals.  In the early days
of public-sector collective bargaining, several states experimented with alternative systems that
did not follow the principle of exclusive representation.  Grodin Decl., ¶¶ 10-11.  Those systems
were quickly abandoned as failures, as they "proved to be unsatisfactory for all concerned.  From
the public employer perspective they made bargaining more difficult, and costly.  They also
tended to divide employees, increasing the likelihood of labor unrest and diminishing the

26

benefits of collective bargaining in producing a mutually productive relationship." *Id.* ¶ 11.

Courts have recognized that an exclusive-representation system is necessary to avoid "competing

demands of rival representatives," and the difficulty of administering multiple agreements that

apply to the similar employees. *Mentele*, 916 F.3d at 791; *see also Branch*, 481 Mass. at 828

("[T]o have the employee representatives speak with one voice at the bargaining table is critical

to the efficient resolution of labor-management disputes and protects the bargaining unit

employees from divide-and-conquer tactics by employers.").  The exclusive-representation

model is near-universal, "covering millions of employees in almost every type of industry" and

was endorsed by Congress in the NLRA.  Grodin Decl., ¶ 9.

Finally, *Janus* itself acknowledged that exclusive representation is a "means significantly

less restrictive" than compelled fair share fees to achieve those compelling state interests.  138

S.Ct. at 2465-66; *see also id.* at 2485 n.27 ("States can keep their labor-relation systems exactly

as they are—only they cannot force nonmembers to subsidize public-sector unions."); *Reisman*,

356 F.Supp.3d at 178 ("*Janus* itself suggests that [exclusive representation] satisfies the exacting

scrutiny standard.").  Thus, even if heightened scrutiny applied (and it does not), PEBA § 10-7E-

15(A) would pass constitutional muster.

**CONCLUSION**

For all the reasons stated above, Defendant requests this Court to grant summary

judgment as to all claims for relief asserted in the Amended Complaint.

Dated: May 31, 2019                              Respectfully submitted,

                                                 */s/ Eileen B. Goldsmith*

                                                 Scott Kronland (*pro hac vice*)
                                                 skronland@altshulerberzon.com

27

Eileen B. Goldsmith (*pro hac vice*)
egoldsmith@altshulerberzon.com
Stefanie L. Wilson (*pro hac vice*)
ALTSHULER BERZON LLP
177 Post Street Suite 300
San Francisco, CA 94108
(415) 421-7151

Shane C. Youtz
shane@youtzvaldez.com
Stephen Curtice
stephen@youtzvaldez.com
James A. Montalbano
james@youtzvaldez.com
YOUTZ & VALDEZ, P.C.
900 Gold Avenue S.W.
Albuquerque, NM 87102
(505) 244-1200 – Telephone

*Attorneys for Defendant AFSCME Council 18*

28

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was electronically filed and served through the CM/ECF system this 31st day of May, 2019, on all registered parties.

Brian K. Kelsey
Reilly Stephens
Liberty Justice Center
190 South LaSalle Street, Suite 1500
Chicago, Illinois 60603
bkelsey@libertyjusticecenter.org
rstephens@libertyjusticecenter.org

Patrick J. Rogers
Patrick J. Rogers, LLC
20 First Plaza, Suite 725
Albuquerque, NM 87102
patrogers@patrogerslaw.com

*Attorneys for Brett Hendrickson*

Lawrence M. Marcus
Alfred A. Park
Park & Associates, LLC
3840 Masthead Street, N.E.
Albuquerque, NM 87109
lmarcus@parklawnm.com
apark@parklawnm.com

*Attorneys for Defendant New Mexico Human Services Department*

*/s/ Eileen B. Goldsmith*
Eileen B. Goldsmith

29