**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO**

**BRETT HENDRICKSON,**

        **Plaintiff,**

**v.**                                 **NO. 18-CV-1119 RB-LF**

**AFSCME COUNCIL 18 *et al.*,**

        **Defendants.**

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

**MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Brett Hendrickson, hereby moves this Court for Summary Judgment on both counts of the First Amended Complaint, pursuant to Federal Rule of Civil Procedure 56, and submits below this memorandum of law in support of the motion.

# TABLE OF CONTENTS

MOTION FOR SUMMARY JUDGMENT....................................................................... 1

TABLE OF CONTENTS................................................................................................. 2

INTRODUCTION .......................................................................................................... 6

STATEMENT OF FACTS ............................................................................................. 7

SUMMARY JUDGMENT STANDARD ....................................................................... 8

ARGUMENT ................................................................................................................. 9

   I.   Refusing to withdraw Hendrickson's union membership and continuing to deduct dues from his paycheck violated his First Amendment rights under *Janus*. ..................................... 9

     A.   Under *Janus,* Unions may only claim membership and deduct dues if they first receive "affirmative consent."................................................................................................... 9

     B.   Requiring employees to withdraw their union membership only within arbitrary windows set by the union violates *Janus*.............................................................................. 12

     C.   The Union cannot avoid a judgment of this Court by releasing Hendrickson from union membership on its own timing after the filing of this lawsuit............................................. 13

   II.   Recognizing the Union as Hendrickson's exclusive representative for bargaining purposes violates his First Amendment rights of speech and association................................................. 16

     A.   Hendrickson cannot be forced to associate with a group that he disagrees with. .......... 16

     B.   No state interest is compelling enough to sustain Hendrickson's forced association.... 18

     C.   The Union's reliance on *Knight* is misplaced. ............................................................. 20

CONCLUSION............................................................................................................. 23

# TABLE OF AUTHORITIES

*A.L.A. Schechter Poultry Corp. v. United States*,
  295 U.S. 495 (1935) ............................................................... 21

*Abood v. Detroit Board of Education*,
  431 U.S. 209 (1977) ........................................................... 21, 22

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) ................................................................ 14

*Becker v. Bateman*,
  709 F.3d 1019 (10th Cir. 2013) ................................................ 9

*Belgau v. Inslee*,
  *No. 18-5620 RJB*, 2018 U.S. Dist. LEXIS 175543 (W.D. Wash. Oct. 11, 2018) .................. 13

*Carter v. Carter Coal Co.*,
  298 U.S. 238 (1936) ............................................................... 21

*City News & Novelty, Inc. v. Waukesha*,
  531 U.S. 278, 121 S. Ct. 743, 148 L. Ed. 2d 757 (2001) ........................ 15

*City of Mesquite v. Aladdin's Castle, Inc.*,
  455 U.S. 283, 102 S. Ct. 1070, 71 L. Ed. 2d 152 (1982) ........................ 15

*College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
  527 U.S. 666 (1999) ............................................................... 10

*County of Riverside v. McLaughlin*,
  500 U.S. 44, 111 S. Ct. 1661, 114 L. Ed. 2d 49 (1991) ........................ 14

*D. H. Overmyer Co. v. Frick Co.*,
  405 U.S. 174 (1972) ............................................................... 10

*Fisk v. Inslee*,
  *No. 17-35957*, 2018 U.S. App. LEXIS 35317 (9th Cir. Dec. 17, 2018) ................ 14

*Gerstein v. Pugh*,
  420 U.S. 103, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975) ........................... 14

*Harper v. Va. Dep't of Taxation*,
  509 U.S. 86 (1993) ................................................................ 11

*Janus v. AFSCME*,
  138 S. Ct. 2448 (2018) ....................................................... *passim*

*Johnson v. Rancho Santiago Cmty. Coll. Dist.*,
  623 F.3d 1011 (9th Cir. 2010) ................................................... 14

*Johnson v. Zerbst*,
  304 U.S. 458 (1938) ........................................................................................ 10

*Jordan v. Fox, Rothschild, O'Brien & Frankel*,
  20 F.3d 1250 (3d Cir. 1994) ........................................................................... 12

*Knight v. Minn. Cmty. Coll. Faculty Ass'n.*,
  571 F. Supp. 1 (D. Minn. 1982) ..................................................................... 21

*Knox v. SEIU, Local 1000*,
  567 U.S. 298 (2012) ........................................................................................ 15

*Minn. State Bd. for Cmty. Colls. v. Knight*,
  465 U.S. 271 (1984) ................................................................................ 20, 21

*Neely v. United States*,
  546 F.2d 1059 (3d Cir. 1976) ......................................................................... 11

*Ohio Bell Tel. Co. v. Public Utilities Comm'n*,
  301 U.S. 292 (1937) ........................................................................................ 10

*Pasha v. United States*,
  484 F.2d 630 (7th Cir. 1973) .......................................................................... 11

*Plyler v. Doe*,
  457 U.S. 202 (1982) ........................................................................................ 19

*Police Dep't of Chicago v. Mosley*,
  408 U.S. 92 (1972) .......................................................................................... 19

*Roe v. Wade*,
  410 U.S. 113 (1973) ........................................................................................ 16

*Romer v. Evans*,
  517 U.S. 620 (1996) ........................................................................................ 19

*Stanley v. Illinois*,
  405 U.S. 645 (1972) ........................................................................................ 19

*Super Tire Eng'g Co. v. McCorkle*,
  416 U.S. 115 (1974) ........................................................................................ 16

*Sweeney v. Madigan*,
  *No. 18-cv-1362*, 2019 U.S. Dist. LEXIS 19389 (N.D. Ill. Feb. 6, 2019) .............................. 17

*Tashjian v. Republican Party*,
  479 U.S. 208 (1986) ........................................................................................ 19

*United States v. Lewis*,
  342 F. Supp. 833 (E.D. La. 1972) ................................................................... 11

*United States v. Lewis*,
    478 F.2d 835 (5th Cir. 1973) .................................................................... 11

*Pinsky v. Duncan*,
    79 F.3d 306 (2d Cir. 1996) ...................................................................... 12

*West Virginia Bd. of Ed. v. Barnette*,
    319 U. S. 624 (1943) ............................................................................... 17

*Wilson v. Garcia*,
    471 U.S. 261 (1985) ................................................................................ 15

*Wyatt v. Cole*,
    994 F.2d 1113 (5th Cir. 1993) .................................................................. 11

*Young v. UPS*,
    135 S. Ct. 1338 (2015) ............................................................................... 9

<u>Statutes & Rules</u>

28 U.S.C. § 2201(a) ...................................................................................... 7

42 U.S.C. § 1983 ........................................................................................... 7

42 U.S.C. § 1988 ......................................................................................... 23

Federal Rule of Civil Procedure 56 ............................................................... 1


N.M. Stat. Ann. § 10-7E-9(G) ..................................................................... 23

N.M. Stat. Ann. § 10-7E-15(A) ........................................................... 6, 7, 24

N.M. Stat. Ann. § 10-7E-17 ............................................................ 12, 16, 17, 23

## INTRODUCTION

Government employees have a First Amendment right not to join or pay any fees to a union "unless the employee affirmatively consents" to do so. *Janus v. AFSCME*, 138 S. Ct. 2448, 2486 (2018). Plaintiff, Brett Hendrickson ("Hendrickson"), repeatedly notified his employer, the New Mexico Human Services Department ("HSD"), that it did not have his affirmative consent to withdraw union dues from his paychecks. These requests were denied. Instead, HSD insisted that Hendrickson would have to wait to exercise his First Amendment right not to pay union dues until an opt-out period determined by the HSD collective bargaining agreement with the union, Defendant AFSCME Council 18 (the "Union").

Forcing employees to continue to pay union dues until the union's preferred opt-out period is unconstitutional. Hendrickson's union membership application is not valid because he was not given the option to pay nothing to the Union. The burden is on the Union to prove by "clear and compelling" evidence that Hendrickson provided "affirmative consent" to pay union dues, and the Union cannot meet this burden because of the unconstitutional nature of the choice it gave him. *Id.* Hendrickson was given the unconstitutional choice between paying union dues as a member of the Union or paying union agency fees as a non-member of the Union. The Supreme Court in *Janus* recognized that Hendrickson should have been given the choice to pay nothing at all to the Union as a non-member of the Union. Because he was not given this choice, his union authorization cards are no longer valid.

Also, it is a violation of the First Amendment to force citizens to associate with organizations or causes with which they do not wish to associate. Yet New Mexico law grants public sector unions the power to speak on behalf of employees as their exclusive representative. N.M. Stat. Ann. § 10-7E-15(A). Pursuant to this law, the Union purports to act as the exclusive

representative of Hendrickson. This compelled arrangement abridges his rights of speech and association.

Plaintiff has brought this case under 42 U.S.C § 1983 and 28 U.S.C. § 2201(a), seeking declaratory and injunctive relief, as well as damages in the amount of the dues previously deducted from his paychecks.

Plaintiff and Defendants agree that "there are no material facts in dispute, [and] that all the relevant questions are matters of law." Joint Status Report and Provisional Discovery Plan ("JSR") at 2 (Dkt. 27). Hendrickson, therefore, submits this memorandum in support of his motion for summary judgment. The court should grant the motion because the case primarily presents questions of law appropriate for summary disposition.


## STATEMENT OF FACTS

Defendant Hector Balderas ("Balderas") is the Attorney General of New Mexico. JSR at 3. Defendant Michelle Lujan Grisham ("Lujan Grisham") took office as Governor of New Mexico on January 1, 2019. *Id*. Hendrickson is an employee of HSD and has been since 2001.[1] *Id*. Defendant AFSCME Council 18 is the certified exclusive bargaining representative for Hendrickson's bargaining unit, pursuant to N.M. Stat. Ann. § 10-7E-15(A). *Id*. The collective bargaining agreement between the Union and HSD, signed in 2004, stated that employees who were not members of the Union, as a condition of continuing employment, were required to pay the Union each pay period a fair share payment in an amount certified by the Union. Defendant AFSCME Council 18's Answer to First Amended Complaint ("Answer") ¶ 16. Hendrickson

---

[1] Hendrickson switched to another department in state government for a year and returned to HSD, so he has been continuously employed by HSD since 2006. See Hendrickson Declaration ⁋ 2, Attached as the only Exhibit to this Motion; First Amended Complaint ("FAC") ¶ 17 (Doc. 38).

signed a Union membership card on or about March 8, 2007. Answer ¶ 20; Hendrickson Declaration ⫿ 3. At the time Hendrickson signed the Union membership card, neither the Union nor HSD could have informed him about his constitutional right not to pay fair share, or agency, fees because the *Janus* ruling was not decided by the Supreme Court until June 27, 2018. Hendrickson Declaration ⫿ 4. After he signed the Union membership card, dues were deducted from Hendrickson's paycheck and transmitted to the Union. Answer ¶ 5. Hendrickson's monthly dues payment in 2008 was approximately $26, and the monthly dues increased by nominal amounts annually. Answer ⫿ 21.

On August 9, 2018, Hendrickson sent an e-mail to the State Personnel Office ("SPO") expressing his desire to withdraw from union membership, asking whether he could do so immediately or whether he had to wait. Hendrickson Declaration ¶ 5. The same day SPO replied that the collective bargaining agreement between HSD and the Union controlled when he could cease union dues deductions from his paycheck. Hendrickson Declaration ¶ 6. Union dues continued to be deducted from Hendrickson's paycheck through December 2018. Answer ⫿ 21. On December 6, 2018, the Union sent Hendrickson a letter explaining that the collective bargaining agreement stated his dues authorization is revocable during the first two weeks of December of each year; that the Union had processed his resignation from membership; and that it was notifying his employer to cease his union dues deductions. Answer ⫿ 34; Hendrickson Declaration ¶ 7. Hendrickson has not been refunded any union dues paid prior to December 2018. Hendrickson Declaration ⫿ 8.

## SUMMARY JUDGMENT STANDARD

"A party is entitled to summary judgment if there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." *Young v. UPS*, 135 S. Ct. 1338, 1367 (2015) (quoting Fed. Rule Civ. Proc. 56(a)). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)). Plaintiff and Defendants stipulate that "there are no material facts in dispute, [and] that all the relevant questions are matters of law." JSR at 2.

## ARGUMENT

I.      **Refusing to withdraw Hendrickson's union membership and continuing to deduct dues from his paycheck violated his First Amendment rights under *Janus*.**

A.  **Under *Janus*, Unions may only claim membership and deduct dues if they first receive "affirmative consent."**

The Court in *Janus* explained that payments to a union could be deducted from a non-member's wages only if that employee "affirmatively consents" to pay:

> Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay. By agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed. Rather, to be effective, the waiver must be freely given and shown by "clear and compelling" evidence. Unless employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met.

*Janus*, 138 S. Ct. at 2486 (citations omitted).

Supreme Court precedent provides that certain standards be met in order for a person to properly waive his or her constitutional rights. First, waiver of a constitutional right must be of a

"known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Second, the waiver must be freely given; it must be voluntary, knowing, and intelligently made. *D. H. Overmyer Co. v. Frick Co.,* 405 U.S. 174, 185-86 (1972). Finally, the Court has long held that it will "not presume acquiescence in the loss of fundamental rights." *Ohio Bell Tel. Co. v. Public Utilities Comm'n*, 301 U.S. 292, 307 (1937).

In Hendrickson's case, he could not have waived his First Amendment right to not join or pay a union. First, neither the Union nor his employer informed him of his right not to pay a union because, at the time he signed his union membership application, the Supreme Court had not yet issued its decision in *Janus*. Second, neither the Union nor his employer informed him of his right not to pay a union because such a right was prohibited by the collective bargaining agreement in place at the time. Therefore, Hendrickson had no choice but to pay the Union and did not voluntarily, knowingly, or intelligently waive his First Amendment right.

Because the Court will "not presume acquiescence in the loss of fundamental rights," *Ohio Bell Tel. Co.,* 301 U.S. at 307, the waiver of constitutional rights requires "clear and compelling evidence" that the employees wish to waive their First Amendment right not to pay union dues or fees. *Janus*, 138 S. Ct. 2484. In addition, "[c]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights." *College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666 (1999) (citing *Aetna Ins. Co. v. Kennedy ex rel. Bogash*, 301 U.S. 389, 393 (1937)).

The union application Hendrickson signed did not provide a clear and compelling waiver of his First Amendment right not to join or pay a union because it did not expressly state that he had a constitutional right not to pay a union and because it did not expressly state that he was waiving that right.

Nor can the Union rely on the extant case law at the time Hendrickson signed his union authorization. In *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993), the Supreme Court explained that "[w]hen this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." The rule announced in *Janus* is, therefore, the relevant law when analyzing pre-*Janus* conduct.

The Union's liability for dues paid by Hendrickson, therefore, extends backward before *Janus*, limited only, if at all, by a possible statute of limitations defense. Monies or property taken from individuals under statutes later found unconstitutional must be returned to their rightful owner. In *Harper*, taxes collected from individuals under a statute later declared unconstitutional were returned. *Id.* at 98-99. Fines collected from individuals pursuant to statutes later declared unconstitutional also must be returned. *See Pasha v. United States*, 484 F.2d 630, 632-33 (7th Cir. 1973); *United States v. Lewis*, 478 F.2d 835, 846 (5th Cir. 1973); *Neely v. United States*, 546 F.2d 1059, 1061 (3d Cir. 1976). "Fairness and equity compel [the return of the unconstitutional fine], and a citizen has the right to expect as much from his government, notwithstanding the fact that the government and the court were proceeding in good faith[.]" *United States v. Lewis*, 342 F. Supp. 833, 836 (E.D. La. 1972).

While there are some circuit court decisions finding good faith to be a defense to a prejudgment replevin or attachment of property without due process of law, even in those cases the defendant had to return the property at issue. In *Wyatt v. Cole*, 994 F.2d 1113, 1115 (5th Cir. 1993), the defendants seized the plaintiff's cattle and tractor based on a replevin statute later held unconstitutional on due process grounds. While a good faith defense shielded the defendants

from liability from incidental damages, they still had to return the cattle and tractor. *Id*. In *Pinsky v. Duncan*, 79 F.3d 306, 311-13 (2d Cir. 1996), where a defendant attained an unconstitutional attachment on plaintiff's real property, the defendant did not retain that property. In *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1258 (3d Cir. 1994), where the defendant attained an unconstitutional attachment on plaintiff's checking account, the state court "vacated the attachment of [plaintiff's] checking account."

Under *Harper* and these precedents, the Union has no good faith basis to hold Hendrickson to his union authorization or to keep the monies it seized from his wages before the Supreme Court put an end to this unconstitutional practice. Hendrickson is due a refund of these dues.


**B.  Requiring employees to withdraw their union membership only within arbitrary windows set by the union violates *Janus*.**

After the decision in *Janus*, the Union maintained that Hendrickson could only end his dues deduction during an arbitrary window of the Union's choice, despite Hendrickson's repeated requests to stop the dues deduction from his paycheck. Lujan Grisham also maintained that Hendrickson could only end his dues deduction during an arbitrary window of the Union's choice. In her official capacity as governor of New Mexico, Lujan Grisham is the official responsible for past and present actions of both HSD and SPO. Such actions were undertaken pursuant to N.M. Stat. Ann. § 10-7E-17(C), which provides that a "public employer shall honor payroll deductions until the authorization is revoked in writing by the public employee in accordance with the negotiated agreement."

The union dues authorization applications signed by Hendrickson before the Supreme Court's decision in *Janus* cannot meet the standards set forth for waiving a constitutional right, as required by the Supreme Court in *Janus.* 138 S. Ct. at 2484. Therefore, Lujan Grisham and the Union cannot hold employees like Hendrickson to a time window to withdraw their union membership based on these invalid authorizations.

Since being informed of his constitutional rights by the *Janus* decision, Hendrickson has not signed any additional union authorization application. Therefore, he has never knowingly waived his constitutional right to pay nothing to the union, and has, therefore, never given the union the "affirmative consent" required by the *Janus* decision. In the absence of "affirmative consent," this Court should declare that a request to end dues deductions is effective immediately.

### C.  The Union cannot avoid a judgment of this Court by releasing Hendrickson from union membership on its own timing after the filing of this lawsuit.

For months, Hendrickson was denied his right to withdraw his union membership. Yet soon after the filing of this lawsuit, in a ploy to avoid the jurisdiction of this Court, the Union attempted to placate Hendrickson without subjecting their policies to judicial scrutiny. Defendants now contend the case is moot, and they should not have to defend the unconstitutional policy that they and Lujan Grisham continue to enforce against any employee who is not determined enough to sue. This is the same avoidance strategy that other unions have employed across the country, as they attempt to dodge employees who would challenge them. *See, e.g., Belgau v. Inslee*, No. 18-5620 RJB, 2018 U.S. Dist. LEXIS 175543, at *7 (W.D. Wash. Oct. 11, 2018) (where, after being sued, the union changed course and said it would "instruct the

State to end dues deductions for each Plaintiff on the one year anniversary" of their membership

without requiring employees to send the notice their policy required). This count should not

allow the Union to avoid judicial review by picking off employees one by one. A "defendant

cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already,*

*LLC v. Nike, Inc*., 568 U.S. 85, 91 (2013) (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455

U. S. 283, 289 (1982)). Yet that is precisely what the Union would like the Court to allow in this

case. Hendrickson respectfully submits that this Court should not countenance such gimmicks.

The Ninth Circuit has already rejected the exact same mootness argument plaintiffs

present here. As it explained:

> Although no class has been certified and SEIU and the State have stopped
> deducting dues from Appellants, Appellants' non-damages claims are the sort of
> inherently transitory claims for which continued litigation is permissible. *See
> Gerstein v. Pugh*, 420 U.S. 103, 111 n.11, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975)
> (deciding case not moot because the plaintiff's claim would not last "long enough
> for a district judge to certify the class"); *see also County of Riverside v.
> McLaughlin*, 500 U.S. 44, 52, 111 S. Ct. 1661, 114 L. Ed. 2d 49 (1991). Indeed,
> claims regarding the dues irrevocability provision would last for at most a year,
> and we have previously explained that even three years is "too short to allow for
> full judicial review." *Johnson v. Rancho Santiago Cmty. Coll. Dist.,* 623 F.3d
> 1011, 1019 (9th Cir. 2010). Accordingly, Appellants' non-damages claims are not
> moot simply because the union is no longer deducting fees from Appellants.

*Fisk v. Inslee*, No. 17-35957, 2018 U.S. App. LEXIS 35317, at *2-3 (9th Cir. Dec. 17,

2018). The Ninth Circuit recognized that claims like Hendrickson's would never be

addressed by the Court if the union is allowed to moot them in this way. Indeed, since

most windows are annual, few cases would reach judgment in a district court, much less

have the opportunity for appellate review.[2]

---

[2] The Ninth Circuit ultimately dismissed the case because of defective pleading that had failed to
make the arguments in the district court that Hendrickson now presents to this Court. The circuit
court found such arguments had been waived. *Id.* at *3.

Such tactics are not new; they are a typical and longstanding strategy by unions to avoid judicial scrutiny. In *Knox v. SEIU*, Local 1000, 567 U.S. 298 (2012), the Supreme Court rejected an attempt by the union to moot a case by sending a full refund of improperly exacted dues to an entire class:

> "In opposing the petition for certiorari, the SEIU defended the decision below on the merits. After certiorari was granted, however, the union sent out a notice offering a full refund to all class members, and the union then promptly moved for dismissal of the case on the ground of mootness. Such post-certiorari maneuvers designed to insulate a decision from review by this Court must be viewed with a critical eye. *See City News & Novelty, Inc. v. Waukesha*, 531 U.S. 278, 283-284, 121 S. Ct. 743, 148 L. Ed. 2d 757 (2001). The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed. *See City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S. Ct. 1070, 71 L. Ed. 2d 152 (1982). And here, since the union continues to defend the legality of the Political Fight-Back fee, it is not clear why the union would necessarily refrain from collecting similar fees in the future."

*Knox*, 567 U.S. at 307. As in *Knox,* here the Union continues to assert the legality of its withdrawal window policy but wishes to avoid this Court determining its legality. Unlike in *Knox*, the Union has not even offered Hendrickson a full refund of his dues. The Union only managed to secure a refund from Lujan Grisham for dues that were taken from Hendrickson after December 2018. Hendrickson's claim is for all dues deducted since he became a union member more than ten years ago. FAC ¶ 61. Even if this Court were to determine this claim is limited to the statute of limitations, that would amount to three years worth of dues, which the Union has neither paid nor offered to furnish. *Wilson v. Garcia*, 471 U.S. 261, 280 (1985) (New Mexico's Statute of Limitations for §1983 claims is three years). Nor did the Union ever offer Hendrickson anything in satisfaction of his claims for declaratory relief, nor attempt to satisfy his demand for attorneys' fees.

These principles of law are not novel or unique to this case: it is well settled that where a claim is capable of repetition but will evade review, courts are empowered to issue declaratory judgments. In *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 125 (1974), the Supreme Court recognized that "[i]t is sufficient…that the litigant show the existence of an immediate and definite governmental action or policy that has adversely affected and continues to affect a present interest." The Court pointed to *Roe v. Wade,* 410 U.S. 113 (1973), where the birth of the plaintiff's child did not moot claims regarding a right to abortion. The Court explained that even if the need for an injunction had passed, declaratory relief was still appropriate where there was "governmental action directly affecting, and continuing to affect, the behavior of citizens in our society." *Super Tire,* 416 U.S. at 125. The opt-out window Hendrickson was subject to is a policy of the State of New Mexico, embodied in an agreement it negotiated with the Union. It is so much the policy of Lujan Grisham that she initially continued Hendrickson's dues deductions even after the Union had told her to stop. FAC ¶ 38. This policy continues to impact present interests, as Lujan Grisham, the Union, and Balderas continue to enforce it and assert its legality. This continuing direct effect on the behavior of public employees is grounds for this Court's issuance of declaratory relief.

**II.     Recognizing the Union as Hendrickson's exclusive representative for bargaining purposes violates his First Amendment rights of speech and association.**

**A. Hendrickson cannot be forced to associate with a group that he disagrees with.**

Under N.M. Stat. Ann. § 10-7E-17(A)(1), as a condition of his employment, Hendrickson must allow the Union to speak on his behalf on "wages [and] hours," matters that *Janus*

recognizes to be of inherently public concern. 138 S. Ct. at 2473. This compelled association raises serious First Amendment concerns. *Janus*, 138 S. Ct. at 2464 (whenever "a State . . . compels [individuals] to voice ideas with which they disagree, it undermines" First Amendment values). New Mexico law goes further, granting the Union prerogatives to speak on Hendrickson's behalf on all manner of contentious matters. For example, the Union is entitled to speak on Hendrickson's behalf regarding the grievance procedure Hendrickson would have to go through to settle disputes with his employer. N.M. Stat. Ann. § 10-7E-17(F). It may even take a position directly contrary to Hendrickson's best interest in negotiating his salary or other terms of his employment. N.M. Stat. Ann. § 10-7E-17(A)(1). These are precisely the sort of policy decisions that *Janus* recognized are necessarily matters of public concern. 138 S. Ct. 2467.

Unions in other states agree with Hendrickson on this point. In Illinois, the International Union of Operating Engineers, Local 150, AFL-CIO brought a lawsuit against the State of Illinois precisely because they did not want to speak as the exclusive representative of non-union members: "[P]laintiffs assert that they, and therefore their membership, will be compelled to speak on behalf of non-members, infringing on their First Amendment rights." *Sweeney v. Madigan*, No. 18-cv-1362, 2019 U.S. Dist. LEXIS 19389, at *6 (N.D. Ill. Feb. 6, 2019).

Legally compelling Hendrickson to associate with the Union demeans his First Amendment rights. Indeed, "[f]orcing free and independent individuals to endorse ideas they find objectionable is always demeaning. . . . [A] law commanding involuntary affirmation of objected-to beliefs would require even more immediate and urgent grounds than a law demanding silence." *Janus*, 138 S. Ct. at 2464 (2018) (quoting *West Virginia Bd. of Ed. v. Barnette*, 319 U. S. 624, 633 (1943) (internal quotation marks omitted)). New Mexico laws command Hendrickson's involuntary affirmation of objected-to beliefs. The fact that he retains

the right to speak for himself does not resolve the fact that the Union organizes and negotiates as his representative in his employment relations.

### B.  No state interest is compelling enough to sustain Hendrickson's forced association.

Unions and state governments have proffered various claimed interests for compelling the association of employees and, thereby, restricting First Amendment rights. One interest often proffered is "labor peace," meaning the "avoidance of the conflict and disruption that it envisioned would occur if the employees in a unit were represented by more than one union" because "inter-union rivalries would foster dissension within the work force, and the employer could face 'conflicting demands from different unions.'" *Janus*, 138 S. Ct. at 2465. Other interests typically asserted in support of exclusive representation status amount to much the same claim: that it is in the state's interest to have a "comprehensive system" that bundles all employees into a single bargaining representative with which the state can negotiate. *See, e.g.,* Brief for Respondents Lisa Madigan and Michael Hoffman at 4, *Janus v. AFSCME*, 138 S. Ct. 2448, 2486 (2018) (No. 16-1466).

This justification is particularly inapplicable to Hendrickson because he does not seek to introduce a competing union into the bargaining mix but only to ensure that the Union does not speak on his behalf. Furthermore, in *Janus* the Supreme Court assumed, without deciding, that labor peace might be a compelling state interest, but the Court rejected it as a justification for agency fees. The interest should, likewise, be rejected as a justification for exclusive representation. The Supreme Court recognized that "it is now clear" that the fear of "pandemonium" if the union couldn't charge agency fees was "unfounded." *Janus*, 138 S. Ct. at 2465. To the extent that individual bargaining is claimed to raise the same concerns of

pandemonium, this too, remains insufficient. The Supreme Court rejected the invocation of this rationale due to the absence of evidence of actual harm. *Id*. It may be that the state finds it convenient to negotiate with a single agent, and the Union may find it convenient to accrue all bargaining power to itself, but that, in and of itself, is not enough to overcome First Amendment rights. The rights to speech and association cannot be limited by appeal to administrative convenience. *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 102 n.9 (1972) (in free speech cases, a "small administrative convenience" is not a compelling interest); *see also Tashjian v. Republican Party*, 479 U.S. 208, 218 (1986) (holding that a state could "no more restrain the Republican Party's freedom of association for reasons of its own administrative convenience than it could on the same ground limit the ballot access of a new major party").

While it may be quicker or more efficient for Lujan Grisham to negotiate only with the Union, "the Constitution recognizes higher values than speed and efficiency." *Stanley v. Illinois,* 405 U.S. 645, 656 (1972). Even if Lujan Grisham could claim that it saves monetary resources by negotiating only with the Union, the preservation of government resources is not an interest that can justify First Amendment violations. In other contexts where the state's burden was only rational basis review, the Supreme Court has rejected such justifications. *See, e.g., Romer v. Evans*, 517 U.S. 620, 635 (1996) (rejecting the "interest in conserving public resources" in a case applying only heightened rational basis review); see also *Plyler v. Doe*, 457 U.S. 202, 227 (1982) ("a concern for the preservation of resources standing alone can hardly justify the classification used in allocating those resources"). Such claimed interests are not enough to leave Hendrickson "shanghaied for an unwanted voyage." *Janus*, 138 S. Ct. at 2466.

**C.  The Union's reliance on *Knight* is misplaced.**

In its withdrawn motion to dismiss Hendrickson's exclusive representation claim, the Union relied heavily on *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271(1984). Motion to Dismiss Count II (Dkt. 17) ("MTD"). Hendrickson anticipates the Union will renew this argument at the summary judgment stage of litigation, and therefore, addresses it now.

The *Knight* case holds that employees do not have a right, as members of the public, to a formal audience with the government to air their views. *Knight* does not decide, however, whether such employees can be forced to associate with the union; therefore, the case is inapposite. As the *Knight* court framed the issue, "The question presented . . . is whether this restriction on participation in the nonmandatory-subject exchange process violates the constitutional rights of professional employees." 465 U.S. at 273.

The plaintiffs in *Knight* were community college faculty who dissented from the certified union. *Id*. at 278. The Minnesota statute at issue required that their employer "meet and confer" with the union alone regarding "non-mandatory subjects" of bargaining. The statute explicitly prohibited negotiating separately with dissenting employees. *Id.* at 276. The plaintiffs filed their suit claiming a constitutional right to take part in these negotiations.

The court explained the issue it was addressing well: "[A]ppellees' principal claim is that they have a right to force officers of the State acting in an official policymaking capacity to listen to them in a particular formal setting." *Id.* at 282. Confronted with this claim, the court held that "[a]ppellees have no constitutional right to force the government to listen to their views. They have no such right as members of the public, as government employees, or as instructors in an institution of higher education." *Id.* at 283.

The First Amendment guarantees citizens a right to speak. It does not deny government, or anyone else, the right to ignore such speech. Unlike the plaintiffs in *Knight*, Hendrickson does not claim that his employer—or anyone else—should be compelled to listen to his views. Instead, he asserts a right against the compelled association forced on him by exclusive representation.

The Union's invocation of *Knight* makes two important missteps. First, it asserted in its Motion to Dismiss that the "the Supreme Court summarily affirmed the lower court's rejection of the Knight plaintiffs' 'attack on the constitutionality of exclusive representation in bargaining over terms and conditions of employment.'" MTD at 15 (quoting *Knight,* 465 U.S. at 278-79). But the Union did not clarify what was summarily affirmed. What was summarily affirmed was a rejection of the argument that collective bargaining violates the non-delegation doctrine, not that it violates a right of association, as the relevant portion of the lower court opinion makes clear. *See Knight v. Minn. Cmty. Coll. Faculty Ass'n.*, 571 F. Supp. 1, 4 (D. Minn. 1982). That the non-delegation doctrine is at issue is proven when the Supreme Court cites to *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935) and *Carter v. Carter Coal Co.*, 298 U.S. 238 (1936), neither of which address a right to freedom of association. *Knight*, 465 U.S. at 279. The plaintiffs in *Knight* viewed the granting of negotiating rights to the union as a delegation of legislative power to a private organization, and the district court rejected the claim, explaining simply that the claim "is clearly foreclosed by the Supreme Court's decision in *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 (1977)." *Knight,* 571 F. Supp. at 4. The statutory arrangement did not violate the non-delegation doctrine "merely because the employee association is a private organization." *Id.* at 5. In its own *Knight* decision, the Supreme Court was

not affirming a claim of exclusive representation equivalent to Count II of Hendrickson's First Amended Complaint.

AFSCME's second misreading of *Knight* severely elevated and misinterpreted dicta in the decision. The central issue of the *Knight* decision is whether plaintiffs could compel the government to negotiate with them instead of, or in addition to, the union. That question is fundamentally different from Hendrickson's claim that the government cannot compel him to associate with the Union by making the Union bargain on his behalf.

In arguing that these two distinct claims are the same, the Union pointed only to dicta towards the end of the *Knight* opinion that suggests the challenged policy "in no way restrained [plaintiffs'] freedom to speak on any education related issue or their freedom to associate or not associate with whom they please." *Knight*, 465 U.S. at 288. Yet the Union's own quotations from that portion of the opinion reinforced that the Court was still addressing the question of being heard. *See* MTD at 17. The Court explains that the government's right to "choose its advisors" is upheld because a "person's right to speak is not infringed when the government simply ignores that person while listening to others." *Knight,* 465 U.S. at 288. The Court raises the matter of association only to address the objection that exclusive representation "amplifies [the union's] voice in the policymaking process. But that amplification no more impairs individual instructors' constitutional freedom to speak than the amplification of individual voices" impairs the ability of others to speak as well. *Id.* This, again, is another path to the same conclusion: First Amendment "rights do not entail any government obligation to listen." *Id.* at 287.

*Knight* is, therefore, not responsive to the question Hendrickson now raises: whether someone else can speak in his name, with his imprimatur granted to it by the government. Hendrickson does not contest the right of the government to choose whom it meets with, to

"choose its advisors," or to amplify the Union's voice. He does not demand that the government schedule meetings with him, engage in negotiation, or any of the other demands made in *Knight*. He demands only that the Union not do so in his name, and he respectfully requests that this Court issue a declaration to that effect.

## CONCLUSION

For the forgoing reasons, the Court should grant Hendrickson Summary Judgment on Claim I for union dues deducted without his affirmative consent. In relief, the Court should declare that signing a union card prior to the *Janus* decision cannot provide a basis for affirmative consent to waive the First Amendment rights upheld in *Janus* because such authorization was based on the unconstitutional choice between paying the union as a member or paying the union as a non-member. The Court should declare that, absent affirmative consent, deducting union dues after a government employee has requested that they stop is a violation of the First Amendment. The Court should declare that N.M. Stat. Ann. § 10-7E-17(C) constitutes an unconstitutional violation of the First Amendment rights to free speech and freedom of association because it allows the withholding of union dues until a time period specified by a collective bargaining agreement. The Court should declare that N.M. Stat. Ann. § 10-7E-9(G) constitutes an unconstitutional violation of First Amendment rights to free speech and freedom of association because it allows unions to demand contract provisions providing for "fair share" fees from non-members. The Court should award monetary damages against the Union for all union dues collected from Hendrickson without his affirmative consent. The Court should award Hendrickson his costs and attorneys' fees under 42 U.S.C. § 1988.

For the forgoing reasons, the Court should grant Hendrickson Summary Judgment on Claim II not to be forced to associate with the Union as his exclusive representative for bargaining purposes. In relief, the Court should declare that government employees have a constitutional right not to be represented by unions as their exclusive representative without their affirmative consent. The Court should declare that N.M. Stat. Ann. § 10-7E-15(A) and all related provisions constitute an unconstitutional violation of the First Amendment rights to free speech and freedom of association for requiring unions to serve as the exclusive representative of government employees for bargaining purposes.

Dated: May 31, 2019

Respectfully Submitted,

/s/ Brian K. Kelsey
Brian K. Kelsey
Tennessee Bar No. 022874
Jeffrey M. Schwab
Illinois Bar No. 6290710
Reilly Stephens
Maryland Bar, Admitted December 14, 2017
Liberty Justice Center
190 South LaSalle Street, Suite 1500
Chicago, Illinois 60603
Telephone (312) 263-7668
Facsimile (312) 263-7702
jschwab@libertyjusticecenter.org
bkelsey@libertyjusticecenter.org
rstephens@libertyjusticecenter.org

-and-

/s/ Patrick J. Rogers
Patrick J. Rogers
Patrick J. Rogers, LLC
20 First Plaza
Suite 725
Albuquerque, NM 87102

505-938-3335
patrogers@patrogerslaw.com

*Attorneys for Brett Hendrickson*

I hereby certify that the foregoing
pleading was electronically filed the
31st day of May, 2019, through the
Court's CM/ECF filing system,
which causes all parties of record to
be served.

*/s/ Patrick J. Rogers*