**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

**BRETT HENDRICKSON,**

**Plaintiff,**

**v.**                                                    **NO. 1:18-CV-01119-RB/LF**

**AFSCME COUNCIL 18; MICHELLE LUJAN
GRISHAM, in her official capacity as
Governor of New Mexico; and HECTOR
BALDERAS, in his official capacity as Attorney
General of New Mexico,**

**Defendants.**

## DEFENDANTS MICHELLE LUJAN GRISHAM AND HECTOR BALDERAS' MOTION TO DISMISS

**COME NOW** Defendants Michelle Lujan Grisham, in her official capacity as Governor of New Mexico, and Hector Balderas, in his official capacity as Attorney General of New Mexico, (collectively "State Defendants") by and through their counsel of record, Park & Associates, L.L.C. (Alfred A. Park and Lawrence M. Marcus), and hereby move to dismiss the above styled cause against them.  For their Motion, State Defendants **STATE**:

### I.  PROCEDURAL BACKGROUND

On November 30, 2018, Plaintiff Brett Hendrickson filed his original Complaint Seeking Declaratory Relief, Injunctive Relief, and Damages for Deprivation of First Amendment Rights (hereinafter "Complaint") [Doc. No. 1, Filed Nov. 30, 2018] in the present case. Plaintiff brought his original Complaint against the New Mexico Human Services Department and AFSCME Council 18. Plaintiff then filed an Amended Complaint on March 15, 2019 (hereinafter "Amended Complaint") [Doc. No. 21, filed March 13, 2019]. This Amended Complaint, *inter*

*alia*, replaced the New Mexico Human Services Department as a defendant with Governor Lujan-Grisham and Attorney General Balderas.    Plaintiff's claims, which are to be accepted as true for the purposes of this Motion, are as follows: Plaintiff claims that he was an employee of NMHSD since 2001. Amended Complaint, ¶ 16. Plaintiff notes that, when NMHSD unionized in 2003 and 2004, he was required to either join the American Federation of State, County and Municipal Employees ("AFSCME") union, or pay his "fair share" agency fee, which is deducted from the pay of all employees who are not union members. Id. Plaintiff claims that he was coerced to join the union in 2006-07, and that he joined the union in 2007. Id., ¶¶ 18-20.

Plaintiff had been a member of the union since then, but he has recently withdrawn from the union, claiming that the decision in Janus v. AFSCME Council 31, 138 S. Ct. 2448 (2018). rendered the fair-share agency fees unconstitutional. Id., ¶ 20. Plaintiff claims that he sent an e-mail to the New Mexico State Personnel Office asking if he could withdraw as a union member. ¶ 25. Plaintiff claims that he was told that the collective bargaining agreement with the union determines when he could resign from the union and, apparently, he would have to wait until a certain time window to withdraw. ¶ 26. However, on December 6, 2018, during the two-week withdrawal or revocation period, the union informed Plaintiff that his resignation had been processed and, as a consequence, Plaintiff was no longer required to pay union dues, as of December 31, 2018. Id., ¶¶ 34, 41. Although, for a short period of time, the State Personnel Office continued to erroneously deduct union dues from Plaintiff's paycheck, these fees were reimbursed. Id., ¶¶ 43-44.

Plaintiff brings his Amended Complaint pursuant to 42 U.S.C. § 1983. Id., ¶ 9. Plaintiff asserts two causes of action: Count I states that "[b]y refusing to allow Hendrickson to withdraw from the Union and continuing to deduct his dues, Defendants are violating his First Amendment

rights to free speech and freedom of association." Amended Complaint, at 5. Count II states that "[t]he state law forcing Hendrickson to continue to associate with the Union without his affirmative consent violates Hendrickson's First Amendment rights to free speech and freedom of association and 42 U.S.C. § 1983." Id. at 11. However, assuming all of the facts alleged in the Complaint to be true, Plaintiff has not stated a claim against either Governor Lujan-Grisham or Attorney General Balderas. First, neither Governor Lujan-Grisham nor Attorney General Balderas is a proper Defendant in this case. Second, Plaintiff's claims for injunctive and/or declaratory relief regarding the fair share agency fees and the limited membership revocation period are moot. Finally, neither the limited membership revocation period nor the naming of the union as the employees' exclusive representative is unconstitutional. As a consequence, State Defendants are entitled to the dismissal of the instant actions.

## II.  LEGAL STANDARD FOR A MOTION TO DISMISS

State Defendants move to dismiss the instant case, pursuant to Fed. R. Civ. P. Rules 12(b)(1) & 12(b)(6), for lack of subject matter jurisdiction, and for failure to state a claim upon which relief can be granted, respectively. "Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms.  First, a facial attack on the complaint's allegations of subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends."  Holt v. U.S., 46 F.3d 1000, 1002-03 (10th Cir. 1995).  As set forth below, based on the facts alleged in the Amended Complaint, the Court lacks subject matter jurisdiction over State Defendants generally, because the Complaint is barred by the Eleventh Amendment, as neither the Governor nor the Attorney General are proper

Defendants under the Ex parte Young exception to that Amendment. 209 U.S. 123 (1908). Likewise, the Court lacks subject matter jurisdiction over Count I of Plaintiff's Complaint, because state agencies are no longer deducting fair share fees from non-union members, and because Plaintiff is no longer a member of the union, so he is not subject to the limited revocation period.

Likewise, when evaluating a motion to dismiss for failure to state a claim, the court assumes the truth of all well-pleaded facts in the complaint, and draws reasonable inferences therefrom in the light most favorable to the plaintiff. See Dias v. City and County of Denver, 567 F.3d 1169, 1178 (10th Cir. 2009). This assumption, however, is inapplicable when the complaint relies on a recital of the elements of a cause of action supported by mere conclusory statements. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Moreover, in addition to the Complaint, it is proper for the Court to consider documents to which the Complaint refers, as well as state court pleadings and other matters of which the Court may take judicial notice. Aragon v. De Baca County Sheriff's Dept., 93 F. Supp. 3d 1283, 1287 (D.N.M. 2015). See also St. Louis Baptist Temple, Inc. v. F.D.I.C., 605 F.2d 1169, 1172 (10th Cir. 1979) (noting that federal courts can take judicial notice of decisions from outside of the federal system if they are directly related to the matter as issue). In the instant case, Plaintiff referred to a letter that he received from the union, as well as union policies. Accordingly, this Court can consider these documents in its review of the instant Motion.

In the instant case, as set forth below, Plaintiff has not stated a claim under Count I, as it pertains to the limited revocation period, or under Count II. This is because neither the limited revocation period nor the status of the union as an exclusive bargaining representative is unconstitutional. Accordingly, Plaintiff has failed state a claim against either Governor Lujan-

Grisham or Attorney General Balderas, so they are both entitled to the dismissal of the instant case.

### III.  THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER STATE DEFENDANTS, BECAUSE NEITHER GOVERNOR LUJAN-GRISHAM NOR ATTORNEY GENERAL BALDERAS ARE PROPER DEFENDANTS FOR THE PURPOSES OF THE *EX PARTE YOUNG* EXCEPTION TO THE ELEVENTH AMENDMENT

On its face, Plaintiff's Complaint should be dismissed as to State Defendants for lack of subject matter jurisdiction, based on the Eleventh Amendment to the United States Constitution. The Eleventh Amendment to the United States Constitution states that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  While the plain language of the amendment does not include suits by citizens of the same state, the Supreme Court has repeatedly construed the amendment to bar such suits, as well.  *e.g.*  Edelman v. Jordan, 415 U.S. 651, 662-63 (1974);  Hans v. Louisiana, 134 U.S. 1 (1890). This immunity extends to state officials in their official capacities. *See, e.g.,* Edelman, 415 U.S. at 663. However, there are some exceptions to this immunity. Among these exceptions is the doctrine articulated by the United States Supreme Court in Ex Parte Young, 209 U.S. 123 (1908). This doctrine allows for suit for injunctive and declaratory relief against state officials under certain circumstances.

However, the exceptions to immunity conferred by Ex Parte Young are not open ended. It "requires a 'special relation' between the state officer sued and the challenged statute to avoid the Eleventh Amendment's bar." Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 331 (4th Cir. 2001), citing Young, 209 U.S. at 157. Moreover, "General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging

the law. Thus, the mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action challenging the constitutionality of a state statute." <u>Gilmore</u>, 252 F. 3d at 331 (citations omitted)

In <u>Gilmore</u>, while the governor was "under a general duty to enforce the laws of Virginia by virtue of his position as the top official of the state's executive branch, he lacks a specific duty to enforce the challenged statute." <u>Id.</u> Thus, the Fourth Circuit dismissed the claim against the governor, stating that "[t]he purpose of allowing suit against state officials to enjoin the enforcement of an unconstitutional statute is not aided by enjoining the actions of a states official not directly involved in enforcing the subject statute." <u>Id.</u>

Similarly, the Fifth Circuit has barred claims against both the state governor and the state attorney general, when neither are responsible for enforcing the law in question. <u>Okpalobi v. Foster</u>, 244 F.3d 405 (5th Cir. 2001) (en banc). In <u>Okpalobi</u>, several physicians challenged a Louisiana statute that provided for a private right of action by women who have undergone abortions; this right of action would be brought against the physicians who performed the abortions. 244 F.3d at 409. The Court held that, because the statute in question created a private right of action, "[t]he plaintiffs have never suggested that any act of the defendants has caused, will cause, or could possibly cause any injury to them." <u>Id.</u> at 426.  The Court noted that there exists "a long-standing rule that a plaintiff may not sue a state official who is without any power to enforce the complained-of statute." <u>Id.</u> Moreover, the harm of which the plaintiffs complained was not redressable by either the Governor or the attorney general, noting that "[t]he governor and attorney general have no power to redress the asserted injuries. In fact, under Act 825, no state official has any duty or ability to do *anything*. The defendants have no authority to prevent

a private plaintiff from invoking the statute in a civil suit." Id. at 427. Accordingly, the *en banc* court reversed the panel's decision that the statute was unconstitutional.

The Tenth Circuit has also applied the principle that a federal suit against state officials will only be available if these officials have enforcement power, and used this principle to dismiss a claim against the Governor and Attorney General of Oklahoma. Bishop v. Okla., 333 Fed. Appx. 361 (10th Cir. Unpublished Opinion June 5, 2009). In Bishop, two same-sex couples attempted to challenge the constitutionality of an amendment to the Oklahoma constitution that barred same sex marriages. 333 Fed. Appx. at 362-363. In their lawsuit, the plaintiffs claimed "they desire to be married but are prevented from doing so, or they are married, but the marriage is not recognized in Oklahoma." Id. at 365. The Court noted that the couples' claims are "simply not connected to the duties of the Attorney General or the Governor. Marriage licenses are issued, fees collected, and the licenses recorded by the district court clerks." Id. Because the Governor and Attorney General were not involved with the process of issuing and recording marriage licenses, and despite their general enforcement powers, the Tenth Circuit held that "[b[ecause the plaintiff failed to name a defendant having a causal connection to their alleged injury that is redressable by a favorable court decision, we conclude the Couples do not have standing." Id. at 364.

In the instant case, Plaintiff challenges the constitutionality of several provisions of the Public Employee Bargaining Act, N.M.S.A. § 10-7E-1 *et seq* ("PEBA"). Enforcement of PEBA, at least at the level of state agencies, is the responsibility of the Public Employee Labor Relations Board ("PERLB"). N.M.S.A. §§ 10-7E-23(A) & 10-7E-4(D).   This board is generally independent of the governor and attorney general. While the governor selects the members of the board, she cannot simply select any member she wishes. Rather, the governor appoints the

membership of the three member board as follows: "The governor shall appoint one member recommended by organized labor representatives actively involved in representing public employees, one member recommended by public employers actively involved in collective bargaining and one member jointly recommended by the other two employees." N.M.S.A. § 10-7E-8 (A).

Moreover, the influence of the governor over the board members begins and ends with their appointments. Members of the board serve fixed three year terms. N.M.S.A. § 10-7E-8(B). Further, the governor does not have the authority to remove any board members from their positions. Am. Fed.of State, County, & Muni. Employees v. Martinez, 2011-NMSC-018, 150 N.M. 132. In fact, in Martinez, the New Mexico Supreme Court noted that the independence of the board was put in place for good reason: the PERLB adjudicates disputes involving departments of the executive branch, creating a potential conflict of interest for the governor. 2011-NMSC-018, ¶ 11. The Court went on to note that:

> Because the PELRB is empowered to make decisions that may adversely affect the executive branch, the PELRB must remain free from the executive's control. The PELRB cannot remain free from the executive's control or coercive influence if we conclude that the members of the PELRB serve at the pleasure of the Governor. The Act's statutory scheme for the appointment of PELRB members provides adequate guarantees that an independent, unbiased decision maker will be selected, and thus comports with the requirements of due process. However, interpreting Article V, Section 5 to empower the Governor to arbitrarily remove its members would not comport with the requirements of due process.

Id. There exists a clear legislative intent to keep the governor from exerting control over the PERLB, beyond a heavily constrained appointment power. Thus, there is nothing that the governor can do to enforce the contested statutes, or to prevent their enforcement. Further, the PEBA does not create any enforcement role whatsoever for the attorney general. Accordingly,

this case closely resembles <u>Gilmore</u>, <u>Okpalobi</u>, and <u>Bishop</u>, in which federal appellate courts have held that a plaintiff cannot assert a claim against a state governor or attorney general. Accordingly, Plaintiff's claims against these individuals must be dismissed.

### IV. PLAINTIFF FAILED TO STATE A CLAIM UNDER COUNT I OF HIS COMPLAINT

### A. THIS COURT HAS NO JURISDICTION OVER COUNT I OF PLAINTIFF'S COMPLAINT, BECAUSE THE CLAIMS THEREIN ARE MOOT

Moreover, even assuming, *ad arguendo*, that the Governor and the Attorney General are appropriate defendants, Count I of Plaintiff's Complaint must still be dismissed. Further, Plaintiff has not stated a claim under Count I of his Complaint. Plaintiff alleges that he joined the union because the alternative was to pay fair share non-member fees, which were declared to be unconstitutional under the <u>Janus</u> decision. Plaintiff then alleges that he was not permitted to withdraw from the union immediately upon the issuance of the <u>Janus</u> decision, and that he had to wait until the revocation period. Plaintiff argues that he is entitled to damages and prospective relief. Plaintiff's claim for damages appears to be limited to the union; he does not appear to assert a claim for damages against the governor or the attorney general. Such a claim would be barred by the Eleventh Amendment, in any event. *See, e.g.,* <u>Edelman v. Jordan</u>, 415 U.S. 651 (1974).

Therefore, Count I of Plaintiff's Complaint, to the extent that it is asserted against State Defendants, appears to be limited to injunctive and declaratory relief stating that both the "fair share fees" and the limited period for withdrawing from the union are unconstitutional. While the Supreme Court held in <u>Janus</u> that the fair share fees are unconstitutional, such a claim is moot in the instant case, because New Mexico state agencies no longer deduct these fair share fees. Further, because Plaintiff is no longer a member of the union, he lacks standing to bring a claim

regarding the limited revocation period. Finally, the limited revocation period is not unconstitutional. Accordingly, Count I of Plaintiff's complaint must be dismissed.

"Under Article III of the constitution, federal courts may adjudicate only actual, ongoing cases or controversies." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990). Accordingly, to the extent that a party seeks equitable relief to halt actions that are confined to the past, and do not have ongoing effects that can be remedied through the judicial process, this case concerns a moot question, and a federal court does not have jurisdiction over the case. *See, e.g.,* Buchanan v. Snedeker, 588 F.3d 1281 (10th Cir. 2009) (holding that a court has no subject matter jurisdiction over a moot case). This is true even if the party seeks declaratory relief. Cox v. Phelps Dodge Corp., 43 F.3d 1345, 1348 (10th Cir. 1994) (superseded on other grounds).

In the present case, Plaintiff seeks a declaration by the court that the "fair share" fees previously deducted from state employees' paychecks violated the First Amendment. However, Plaintiff's Complaint contains no facts that would indicate that any state agency continues to deduct these "fair share" fees. Moreover, on July 6, 2018, Justin Najaka, then Director of the New Mexico State Personnel Board, sent a letter to all state employees informing them of the Janus decision, and stating that "[t]o comply with this ruling, the State personnel Office will immediately cease payroll deductions to public sector unions from non-union members effective pay period June 30, 2018. Justin Najaka Letter of July 6, 2018, attached hereto as Exh. A.

This Court may take judicial notice of the Najaka letter, as it is a statement of an administrative decision. *See, e.g.,* Ray v. Aztec Well Serv. Co., 748 F.2d 888, 889 (10th Cir. 1984); Allen v. Clements, 930 F. Supp. 2d 1252, 1259 (D. Colo. 2013).   Therefore, it is appropriate for the Court to consider this letter in reviewing the Motion. The letter demonstrates that New Mexico state agencies no longer deduct fair share fees from employees who are not

union members. Accordingly, this action was confined to the past, and the Court no longer has jurisdiction to issue injunctive or declaratory relief.

Moreover, Plaintiff has not stated a claim for declaratory or injunctive relief regarding the limited period for withdrawal from the union. First, Plaintiff's claim regarding the limited revocation period is also moot. Plaintiff notes, in his own Complaint, that his withdrawal from the Union has been processed, and he is no longer a member. Amended Complaint, ¶¶ 34, 41 Further, all of Plaintiff's union dues from after his withdrawal have been reimbursed. Finally, unless Plaintiff chooses to rejoin the union, there is absolutely no risk that he will ever be subjected to the limited revocation period ever again. Therefore, this Court cannot provide any prospective relief to Plaintiff, so there is no longer any ongoing case or controversy. Count I of Plaintiff's Complaint should therefore be dismissed on the grounds of mootness.

## B. PLAINTIFF HAS NOT STATED A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER COUNT I, TO THE EXTENT THAT IT CONCERNS THE LIMITED REVOCATION PERIOD

Moreover, Plaintiff has failed to state a claim for which relief can granted based on the limited period of time when he could withdraw from the union. Such a limited revocation period is not unconstitutional under Janus. Janus concerned the rights of individuals who were not members of the union, who had fair share fees deducted from their pay without authorizing the deduction. Plaintiff, however, was a member of the union, and he seeks to be retroactively relieved of the duties under his contact with the union. Quite simply, Plaintiff seeks a "broad expansion of the holding in Janus." Belgau v. Inslee, 359 F. Supp. 3d 1000, 1016 (W.D. Wash. 2019). In Belgau, the plaintiffs sued over a revocation clause in their union contract similar to the one at issue in the present case: the employees were required to give notice between 10 and 20

days prior to the end of each yearly period. Id. Nonetheless, the Court held that this requirement was not unconstitutional. Id. at 1016-17.

Contrary to Plaintiffs' contentions, it is well settled that the First Amendment "does not confer...a constitutional right to disregard promises that would otherwise be enforced under state law." Cohen v. Cowles Media Co., 501 U.S 663, 672 (1991). In Cohen, a political insider agreed to provide newspaper reporters with information relating to a candidate on the condition that the newspapers protected the insider's anonymity. 501 U.S. at 665. The newspapers mentioned the insider by name, breaking their promise. Id. at 666. The court held that the First Amendment did not bar a promissory estoppel claim by the insider. Id. at 671-72.

Similarly, in the instant case, Plaintiff entered into a contractual agreement with the union, which is otherwise enforceable under state law. The First Amendment cannot bar Plaintiff's contractual obligations. As the Court in Belgau noted,

> Janus does not apply here – Janus was not a union member, unlike the Plaintiffs here, and Janus did not agree to a dues deduction, unlike the Plaintiffs here. The relationship between unions and their voluntary members was not at issue in Janus. The notion that the Plaintiffs may have made a different choice if they knew the Supreme Court would later invalidate public employee agency fee arrangements [in Janus] does not void their previous knowing agreements.

359 F. Supp. 3d at 1016-17 (citations omitted). Quite simply, Janus did not overturn the well-settled principle that the First Amendment cannot be used to avoid pre-existing contractual or promissory obligations. Consequently, Count I of Plaintiff's Complaint must be dismissed.

## V.  PLAINTIFF FAILED TO STATE A CLAIM UNDER COUNT II IOF HIS COMPLAINT

Further, Plaintiff has not stated a claim for which relief can be granted under Count II of his Complaint. This Count seeks to invalidate the state statute that allows a union to become an

exclusive representative for a public employee bargaining unit. As with Count I, Plaintiff seeks a major expansion of <u>Janus</u> that was clearly not contemplated by the decision itself. In fact, as set forth below, the <u>Janus</u> decision was justified by the idea that unions would continue to have exclusive bargaining rights.

In <u>Janus</u>, the U.S. Supreme Court acknowledged that the rationale for the fair share agency fees, the interest of the state in maintaining labor peace, was a compelling state interest. 138 S. Ct at 2465. However, the Court rejected the "fair share" agency fees on the grounds that "it is now undeniable that 'labor peace' can readily be achieved 'through means significantly less restrictive of associational freedoms' than the assessment of agency fees." <u>Id.</u> at 2466. This raises the question of the nature of the less restrictive means contemplated by the Supreme Court. In fact, the decision includes a lengthy discussion regarding how to avoid the "free rider" problem, and encourage unions to represent members, as well as non-members. For instance, the Court stated that

> Even without agency fees, *designation as the exclusive representative confers many benefits*. As noted, that status gives the union a privileged place in negotiations over wages, benefits, and working conditions. See § 315/6(c). Not only is the union given the exclusive right to speak for all the employees in collective bargaining, but the employer is required by state law to listen to and to bargain in good faith with only that union.

<u>Id.</u> at 2467. (emphasis added). The Court went on to describe additional benefits of exclusive representation. <u>Id.</u> In addition, the Court noted that bargaining units of employees of the federal government, the Postal Service, and many states enter into union contracts providing for exclusive representation, despite the fact that these governmental entities do not allow for fair share agency fees:

> Under federal law, a union chosen by majority vote is designated as the exclusive representative of all the employees, but federal law does not permit agency fees. See 5 U.S.C. §§ 7102, 7111(a), 7114(a). Nevertheless, nearly a million federal employees—about 27% of the federal work force—are union members. The situation in the Postal Service is similar. Although permitted to choose an exclusive representative, Postal Service employees are not required to pay an agency fee, 39 U.S.C. §§ 1203(a), 1209(c), and about 400,000 are union members. Likewise, millions of public employees in the 28 States that have laws generally prohibiting agency fees are *represented by unions that serve as the exclusive representatives of all the employees.*

Id. at 2466 (emphasis added)

In other words, the Janus opinion devoted a substantial amount of space to discussing the reasons why unions would continue to act as exclusive representatives for public employee bargaining units, even in the absence of fair share agency fees. Thus, the Court clearly anticipated the continuation of exclusivity provisions after the Janus decision. In fact, it is apparent from the decision that the Court determined that the less restrictive means available to maintain labor peace was to continue to allow unions to serve as exclusive representatives, with the advantages associated with that status. Therefore, based on the reasoning of the Janus decision, it is clear that allowing unions to continue as exclusive representatives is necessary to serve the compelling state interest of maintaining labor peace, which allows it to survive First Amendment scrutiny. *See, e.g.,* Burson v. Freeman, 504 U.S. 191, 199-200 (1992). Moreover, the Janus decision   clearly assumed that unions would maintain their status as exclusive representatives for public employee bargaining. Therefore, because the New Mexico statute allowing for exclusive representation does not violate the First Amendment, Plaintiff has not stated a claim for which relief can be granted based on the exclusive representation provision. Accordingly, Count II of Plaintiff's Complaint should be dismissed.

## VI.  CONCLUSION

This Court lacks jurisdiction over Plaintiff's claims against the governor and the attorney general, as they are not proper defendants for the purposes of the <u>Ex Parte Young</u> exception to the Eleventh Amendment immunity.  Moreover, the Court also lacks jurisdiction over Plaintiff's claims regarding the fair share agency fees and the limited period for withdrawal from the union, because those issues are moot, as far as Plaintiff is concerned.  Finally, Plaintiff has not stated a claim regarding either the limited revocation period or the provision allowing for unions to act as exclusive representatives.  Accordingly, Defendants Michelle Lujan Grisham, in her official capacity as Governor of New Mexico, and Hector Balderas, in is official capacity as Attorney General of New Mexico, respectfully request that this Honorable Court dismiss the above styled cause against them in its entirety.

Respectfully Submitted,

PARK & ASSOCIATES, LLC

    /s/ Lawrence M. Marcus
Lawrence M. Marcus
Alfred A. Park
*Attorney for Defendants Michelle Lujan Grisham and Hector Balderas*
3840 Masthead Street, N.E.
Albuquerque, NM  87109
(505) 246-2805

I hereby certify a true and correct copy
of the above pleading was served by the Court's
CM/ECF system on this __31st__ day of
May 2019 to all counsel of record


/s/ Lawrence M. Marcus
Lawrence M. Marcus