IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

BRETT HENDRICKSON,

    Plaintiff,

v.                            NO. 1:18-CV-01119-RB/LF

AFSCME COUNCIL 18; MICHELLE LUJAN
GRISHAM, in her official capacity as
Governor of New Mexico; and HECTOR
BALDERAS, in his official capacity as Attorney
General of New Mexico,

    Defendants.

## DEFENDANTS MICHELLE LUJAN GRISHAM AND HECTOR BALDERAS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

**COME NOW** Defendants Michelle Lujan Grisham, in her official capacity as Governor of New Mexico, and Hector Balderas, in his official capacity as Attorney General of New Mexico, (collectively "State Defendants") by and through their counsel of record, Park & Associates, L.L.C. (Alfred A. Park and Lawrence M. Marcus), and hereby file this Reply Brief in Support of their Motion to Dismiss.  For their Reply, State Defendants **STATE**:

## I.  NEITHER GOVERNOR LUJAN-GRISHAM NOR ATTORNEY GENERAL BALDERAS ARE PROPER DEFENDANTS

Contrary to Plaintiff's contentions, this Court lacks subject matter jurisdiction, because neither the attorney general nor the governor are proper defendants In order for the Ex Parte Young exception to Eleventh Amendment immunity to apply, there must be a "'special relation' between the state officer sued and the challenged statute." Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 331 (4th Cir. 2001), citing Young, 209 U.S. at 157. Moreover, "General authority to enforce the laws of the state is not sufficient to make government officials the proper

1

parties to litigation challenging the law. Thus, the mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action challenging the constitutionality of a state statute." Gilmore, 252 F. 3d at 331 (citations omitted); *See also* Okpalobi v. Foster, 244 F.3d 405 (5th Cir. 2001) (en banc) (holding that, where a statute created a private right of action, rather than enforcement by the governor or attorney general, neither state official was a proper defendant); Bishop v. Okla., 333 Fed. Appx. 361 (10th Cir. Unpublished Opinion June 5, 2009) (holding that a constitutional challenge to a ban on same sex marriage was not properly brought against the governor and attorney general when marriage licenses were issued by court clerks)

Contrary to Plaintiff's contention, the general enforcement powers of the governor and attorney general do not extend to the enforcement of the statutes challenged in the present case, which are sections of the Public Employee Bargaining Act, N.M.S.A. § 10-7E-1 *et seq* ("PEBA"). The enforcement power of the governor and attorney general regarding this Act is, at most, indirect.  Enforcement of PEBA, at least at the level of state agencies, is the responsibility of the Public Employee Labor Relations Board ("PERLB"). N.M.S.A. §§ 10-7E-23(A) & 10-7E-4(D). Aside from a heavily restricted appointment power, the governor has no influence over the PERLB, and the attorney general has no influence whatsoever. N.M.S.A. § 10-7E-8 (A) (governor appoints PERLB members based on recommendations from various groups); N.M.S.A. § 10-7E-8(B) (PERLB members serve fixed three year terms); Am. Fed.of State, County, & Muni. Employees v. Martinez, 2011-NMSC-018, 150 N.M. 132 (governor cannot fire PERLB members). Moreover, this independence serves an important purpose. Because the PELRB is empowered to make decisions that may adversely affect the executive branch, the PELRB must remain free from the executive's control.  2011-NMSC-018, ¶ 11.

Quite simply, the PERLB is responsible for the enforcement of the statutes and union contract provisions that Plaintiff finds to be objectionable, and the Governor and the Attorney General do not exert sufficient authority over this body.

Further, all of the case law cited by Plaintiff can be distinguished from the instant case. A state's executive branch, namely the governor and the attorney general, has general enforcement power regarding the state's laws. This was the rationale for the decision in Petrella v. Brownback, 697 F.3d 1285 (10th Cir. 2012). At issue in Petrella was the constitutionality of a Kansas law that placed a cap on the "Local Option Budget" that a local school district could use to obtain more education funds from local property taxes. 697 F.3d at 1290. While the Court found that the governor and the attorney general were proper defendants, based on the general enforcement power of the executive branch, this is an example of a statute that was encompassed by this general enforcement power. If a local school district were to violate the cap on the Local Option Budget, it would be the governor and the attorney general that would take any enforcement action, as provided by the Kansas State Constitution. 697 F.3d at 1294. However, enforcement of New Mexico public employee union contracts is not encompassed by this general authority. As noted above, enforcement of contracts arising under PEBA is the specific responsibility of the independent labor relations board, rather than that of the governor or attorney general. N.M.S.A. §§ 10-7E-23(A) & 10-7E-4(D). Petrella is thus inapplicable.

Similarly, the Tenth Circuit's decision in Safe Streets Alliance v. Hickenlooper, 859 F.3d 865 (2017) also has no bearing on the instant case. First, it does not appear from the decision that Governor Hickenlooper raised the argument that he was an improper defendant, and the decision pertaining to subject matter jurisdiction cited by Plaintiff merely noted that "the Reillys pled well-defined federal causes of actionto vindicate federal substantive rights Congress enumerated

3

in RICO." 859 F.3d at 869. Thus, the decision focused on the basic requirement for subject matter jurisdiction, rather than the Eleventh Amendment or other exceptions to that jurisdiction. Thus, these exceptions were not before the Court in Hickenlooper, so the decision is of no use in the instant matter.

Secondly, the provision legalizing recreational marijuana in Colorado, like the Local Option Budget statute in Kansas, was encompassed by the governor's general enforcement powers. In Hickenlooper, the plaintiffs sought to have all licenses to cultivate marijuana invalidated. 859 F.3d at 896. Regulations for the cultivation of marijuana are found in the Retail Marijuana Code, a section of the Code of Colorado Regulations promulgated by the Marijuana Enforcement Division of the Colorado Department of Revenue. 1 C.C.R 212-2. Since the governor would have direct control over a cabinet level executive department, he would have been a proper plaintiff in that litigation. Accordingly, that case can be distinguished from the one at bar, in which an independent labor relations board is responsible for enforcement of the relevant statute.

The remaining cases cited by Plaintiff both explicitly describe a substantial amount of of control by the governor and/or attorney general, and can be easily distinguished on those grounds. In Kitchen v. Herbert, 755 F.3d 1193 (10th Cir. 2014), like in Bishop, the Tenth circuit considered a state ban on same sex marriages; in that case the Court considered Utah's ban. Like the governor of Oklahoma in Bishop, Utah's governor raised the defense that he was an improper party. The Tenth Circuit affirmed a district court grant of summary judgment for the plaintiff, distinguishing Bishop on the grounds that, while Oklahoma marriage licenses were issued by court clerks, Utah licenses were issued by county clerks. In so doing, the Court emphasized the amount of control that the governor and the attorney general had over these county clerks, noting

that "the Governor and the Attorney General have also demonstrated a 'willingness to exercise' their duty to ensure clerks and other state officials enforce Amendment 3 [barring same sex marriage]." 755 F.3d at 1203 In addition, the same-sex marriage ban provided for criminal penalties for clerks who issued licenses for prohibited marriage, and these charges "would be filed by a county or district attorney under the supervision of the Attorney General. And the Governor could order the Attorney General to assist in such prosecution." Id. at 1202-03. It was the specific control exercised by the governor and attorney general that allowed the Court to distinguish Bishop. Given that the Governor and the Attorney General do not exert similar control over the PELRB, this case more closely resembles Bishop than it does Herbert.

Finally, while Harris v. Quinn, 573 U.S. 616 (2014), is a labor relations case, it can also be distinguished from the matter at bar. First, as in Hickenlooper, the issue of whether the governor was a proper defendant under the Ex Parte Young exception to Eleventh Amendment immunity was not discussed in the decision; it did not appear to have been brought before the Court. Secondly, Harris concerned the constitutionality of an amendment to the Illinois Public Labor Relations Act conferring partial public employee status on personal assistants who were employed by individuals with disabilities pursuant to the state's Rehabilitation Program. This public employee status was limited to the issue of coverage under the Act. Illinois' equivalent of New Mexico's PERLB, the Illinois Labor Relations Board, had originally found that, under a previous version of the Act, these assistants were not public employees. However, the Governor of Illinois the issued an executive order circumventing that decision. While the executive order was later codified by the legislature, this order demonstrates the control that the Governor of Illinois has over the state's Labor Relations Board, control that is apparently much greater than that exercised by Lujan-Grisham over New Mexico's PERLB. Quite simply, because PERLB is

essentially independent of control by the Governor and Attorney General, these officials are improper defendants, and are thus entitled to the dismissal of the instant case.

## II. THE CLAIMS IN COUNT I OF PLAINTIFF'S COMPLAINT ARE MOOT

Contrary to Plaintiff's contention, the claim inn Count I of his Complaint, challenging the limited revocability period for union memberhip, is clearly moot. "Under Article III of the constitution, federal courts may adjudicate only actual, ongoing cases or controversies." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990). Accordingly, to the extent that a party seeks equitable relief to halt actions that are confined to the past, and do not have ongoing effects that can be remedied through the judicial process, this case concerns a moot question, and a federal court does not have jurisdiction over the case. *See, e.g.,* Buchanan v. Snedeker, 588 F.3d 1281 (10th Cir. 2009) (holding that a court has no subject matter jurisdiction over a moot case). This is true even if the party seeks declaratory relief. Cox v. Phelps Dodge Corp., 43 F.3d 1345, 1348 (10th Cir. 1994) (superseded on other grounds).

The State of New Mexico will no longer deduct fair share fees from employees who do not join the union. On July 6, 2018, Justin Najaka, then Director of the New Mexico State Personnel Board, sent a letter to all state employees informing them of the Janus decision, and stating that "[t]o comply with this ruling, the State personnel Office will immediately cease payroll deductions to public sector unions from non-union members effective pay period June 30, 2018. Justin Najaka Letter of July 6, 2018, attached as Exh. A to State Defendants' Motion to dismiss [Doc. No. 37, filed May 31, 2019]. Plaintiff claims that he joined the union only because he would have to pay fees anyway: he would have had paid union dues because he joined the union, but he would have paid fair share fees if he had not. Therefore, he argues that he should

have been permitted to leave the union as soon as the Janus holding rendered the fair share fees unconstitutional.

Plaintiff argues that "[b]ecause the policy whose constitutionality is in question presents an annual revocation period, the time window to resign membership will almost always come to pass before the case can properly be considered by a Court." P. Resp. Brief [Doc. No. 43, filed June 27, 2019] ("Response Brief") at 8. However, this argument fails because Plaintiff's claim in Count I depends on the fact that he joined the union, agreeing to the limited revocability period, before Janus v. American Federation of State, County, and Municipal Employees, 138 S. Ct. 2448 (2018) was decided, and therefore he could not having knowingly waived his right to neither join a union nor pay "fair share" fees. Response Brief at 9. Thus, he argues that he should have been permitted to leave the union the instant that Janus was decided. This is how he attempts, in his Response Brief, to distinguish Cohen v. Cowles Media Co., 501 U.S 663, 672 (1991) (holding that the First Amendment "does not confer…a constitutional right to disregard promises that would otherwise be enforced under state law."). Plaintiff argues that "in Cohen the newspaper contracted away its right to publicize with full knowledge of its First Amendment rights. There was no intervening change in law that recognized a right that the newspaper could not have previously asserted. Hendrickson does not deny that one can make a knowing waiver of First Amendment rights. He simply denies that any such knowing waiver was made by him." Response Brief at 9.

Plaintiff bases his claim on his alleged unknowing waiver of his First Amendment rights, and the intervening change in law provided by Janus. However, his particular situation is incapable of repetition. New Mexico state policy, as described in the Najaka letter, now prevents state agencies from deducting fair share fees from employees who are not union members. This

7

policy predates the instant case. Accordingly, as long as Janus remains good law, no New Mexico state employee will ever join a union because he or she would have to pay fair share fees anyway. Moreover, more than a year has passed since Janus, so all union members who joined a union because of the fair share fees have had the opportunity to resign. All future waivers of the rights described in Janus will be knowing. Quite simply, Plaintiff's argument that his situation is capable of repetition is without merit. Count I of his Complaint should be dismissed as moot.

### III. THE CLAIMS IN COUNT I OF PLAINTIFF'S COMPLAINT ARE WITHOUT MERIT BECAUSE THE LIMITED REVOCATION PERIOD IS NOT UNCONSTITUTIONAL

Further, contrary to Plaintiff's contentions, the limited revocability period is not unconstitutional, even to the extent that it is enforced against employees who wished to leave their unions when Janus was decided. Plaintiff admits that an employee can waive his right to neither join a union nor pay fair-share fees, and thus be bound by a limited revocability period, as long as this waiver is entered into knowingly by the employee. However, Plaintiff argues that, before Janus was decided, he was unaware of the fact that he did not have to choose between joining a union or paying fair-share fees. Therefore, Plaintiff claims that it was unconstitutional for the state and the union to require him to wait until the revocation period to resign his membership after Janus was decided. However, Plaintiff fails to cite any precedent in support of this position, and the overwhelming weight of post Janus authority rejects Plaintiff's position.

Quite simply, Plaintiff seeks a "broad expansion of the holding in Janus" that is not justified by the decision. Belgau v. Inslee, 359 F. Supp. 3d 1000, 1016 (W.D. Wash. 2019). In Belgau, the plaintiffs sued over a revocation clause in their union contract similar to the one at issue in the present case: the employees were required to give notice between 10 and 20 days

prior to the end of each yearly period. Id. Nonetheless, the Court held that this requirement was not unconstitutional. Id. at 1016-17.

Further, the Court in Belgau went on to note that

> Janus does not apply here – Janus was not a union member, unlike the Plaintiffs here, and Janus did not agree to a dues deduction, unlike the Plaintiffs here. The relationship between unions and their voluntary members was not at issue in Janus. ***The notion that the Plaintiffs may have made a different choice if they knew the Supreme Court would later invalidate public employee agency fee arrangements [in Janus] does not void their previous knowing agreements.***

359 F. Supp. 3d at 1016-17 (citations omitted)  (emphasis added).

The Ninth Circuit reached a similar determination in another Washington state case. In Fisk v. Inslee, 759 Fed. Appx. 632 (9th Cir. Unpublished Opinion Jan. 9. 2019), the Court held that "deduction of union dues in accordance with membership cards' dues irrevocability provision does not violate Appellants' First Amendment rights." 759 Fed. Appx. at 633. Moreover, the Court noted that "temporarily irrevocable payment authorizations are common and enforceable in many consumer contracts—e.g., gym memberships or cell phone contracts— and we conclude that under state contract law those provisions should be similarly enforceable here." Id. at 644.  See also  Smith v. Sup. Ct., County of Contra Costa, 2018 WL 6072806 at *1 (N.D. Cal. Slip Copy Nov. 16, 2018), (holding that "it's not the rights clarified in Janus that are relevant to Smith – Smith's First Amendment right to opt out of union membership was clarified in 1977, and yet he waived that right by affirmatively consenting to be a member of Local 2700."). Quite simply, Janus did not overturn the well-settled principle that the First Amendment cannot be used to avoid pre-existing contractual obligations. Consequently, Count I of Plaintiff's Complaint should be dismissed.

### IV. PLAINTIFF FAILED TO STATE A CLAIM UNDER COUNT II IOF HIS COMPLAINT; EXCLUSIVITY OF REPRESENTATION IS NOT UNCONSTITUTIONAL

Further, Plaintiff has not stated a claim for which relief can be granted under Count II of his Complaint. This Count seeks to invalidate the state statute that allows a union to become an exclusive representative for a public employee bargaining unit. As with Count I, Plaintiff seeks a major expansion of Janus that was clearly not contemplated by the decision itself. In fact, as set forth below, the Janus decision was justified by the idea that unions would continue to have exclusive bargaining rights.

In Janus, the U.S. Supreme Court acknowledged that the rationale for the fair share agency fees, the interest of the state in maintaining labor peace, was a compelling state interest. 138 S. Ct at 2465. Plaintiff argues that "Janus was assuming *without deciding* that labor peace was a compelling interest." Response Brief at 10 (emphasis in original). However, it is clear from the Janus decision that the Court actually decided that labor peace is a compelling state interest, because it stated "[w]e assume that labor peace in this sense of the term, is a compelling state interest." 138 S. Ct.at 2465. If the Court wished to indicate that it was not deciding this issue, it could have stated that explicitly. The Court has used the phrase "assume, without deciding" numerous times in its history, including multiple times in the past few years. *See, e.g.,* Nat. Aeronautics & Space Admin. v. Nelson, 562 U.S. 134, 138 (2011) ("We assume, without deciding, that the Constitution protects a privacy right of the sort mentioned in Whalen and Nixon"); RJR Nabisco, Inc.v. European Community, 136 S. Ct. 2090, 2103 (2016) ("We therefore decline to reach this issue, and assume without deciding that § 1962(d)'s extraterritoriality tracks that of the provision underlying the alleged conspiracy."); Genesis

Healthcare Corp. v. Symczyk, 569 U.S. 66, 73 (2013) ("We, therefore, assume, without deciding, that petitioners' Rule 68 offer mooted respondent's individual claim.")

Significantly, both Nelson and RJR Nabisco were written by Justice Alito, who also provided the opinion in Janus. If Justice Alito wanted to indicate that the Court was not deciding the issue, he would have said so explicitly. It is thus evident that the Court wished to accept the premise that labor peace is a compelling state interest, just without further elaboration. Further, in a post Janus decision, the Ninth Circuit noted that the State of Washington's "exclusive bargaining agreement with SEIU serves the compelling -- and enduring-- state interest of labor peace." Mentele v. Inslee, 916 F.3d 783, 790 (9th Cir. 2019). The Mentele decision went on to state that "Janus did not revisit the longstanding conclusion that labor peace is a 'compelling state interest' and the Court has long recognized that exclusive representation is necessary to facilitate labor; without it, employers might face 'inter union rivalries' fostering 'dissention within the workforce,' 'conflicting demands from different unions,' and confusion from multiple agreements or employment conditions." 916 F.3d at 790, citing Janus, 138 S. Ct. at 2465.

Further, the Janus opinion devoted a substantial amount of space to discussing the reasons why unions would continue to act as exclusive representatives for public employee bargaining units, even in the absence of fair share agency fees. For instance, the Court stated that

> Even without agency fees, *designation as the exclusive representative confers many benefits*. As noted, that status gives the union a privileged place in negotiations over wages, benefits, and working conditions. See § 315/6(c). Not only is the union given the exclusive right to speak for all the employees in collective bargaining, but the employer is required by state law to listen to and to bargain in good faith with only that union.

Id. at 2467. (emphasis added).

Contrary to Plaintiff's contention, the Court was not merely citing these benefits to explain why exclusive representation is beneficial to the union or to describe the status quo. There is no reason why the Supreme Court would have included such a lengthy discussion unless it was relevant to the Court's determination that fair share agency fees are unnecessary to ensure labor peace. Otherwise, there is no reason why the Supreme Court would care why exclusive representation is beneficial to the union. The only conceivable reason for this discussion is that the Supreme Court accepted that exclusive representation is necessary to serve the compelling state interest in labor peace, and needed to make sure that unions would continue to serve as exclusive representatives. Accordingly, nothing in the Janus decision indicates that exclusivity provisions are unconstitutional, so Count II of Plaintiff's Complaint should be dismissed.

## VI.  CONCLUSION

This Court lacks jurisdiction over Plaintiff's claims against the governor and the attorney general, as they are not proper defendants for the purposes of the Ex Parte Young exception to the Eleventh Amendment immunity.  Moreover, Plaintiff's claims regarding the fair share agency fees and the limited period for withdrawal from the union, because those issues are moot, as all individuals who joined the union prior to the Janus decision have had the opportunity to withdraw.  Finally, Plaintiff has not stated a claim regarding either the limited revocation period or the provision allowing for unions to act as exclusive representatives, as neither are unconstitutional.  Accordingly, Defendants Michelle Lujan Grisham, in her official capacity as Governor of New Mexico, and Hector Balderas, in is official capacity as Attorney General of New Mexico, respectfully request that this Honorable Court dismiss the above styled cause against them in its entirety.

Respectfully Submitted,

PARK & ASSOCIATES, LLC

   /s/ Lawrence M. Marcus
Lawrence M. Marcus
Alfred A. Park
*Attorney for Defendants Michelle Lujan Grisham and Hector Balderas*
3840 Masthead Street, N.E.
Albuquerque, NM  87109
(505) 246-2805

I hereby certify a true and correct copy
of the above pleading was served by the Court's
CM/ECF system on this __1st___ day of
August 2019 to all counsel of record


/s/ Lawrence M. Marcus
Lawrence M. Marcus

13