# EXHIBIT A

FILED
2nd JUDICIAL DISTRICT COURT
Bernalillo County
10/28/2019 9:33 AM
James A. Noel
CLERK OF THE COURT
Marissa Marquez

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT

CITY OF RIO RANCHO,

        Appellant,

v.                                              CV-2019-1398

AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES,
COUNCIL 18, LOCAL 3277, AFL-CIO,

and

STATE OF NEW MEXICO
PUBLIC EMPLOYEE LABOR
RELATIONS BOARD,

        Appellees.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes to the Court's attention as a result of Appellant, the City of Rio Rancho's, appeal of the January 29, 2019, Amended Order of the State of New Mexico Public Employee Labor Relations Board (the "Board"). According to the Amended Order, the parties stipulated that a previously entered preliminary injunction be converted to a permanent injunction in order to move the case forward to an appeal. The Court has reviewed the record and the pleadings and **AFFIRMS** the Board's Amended Order for the reasons that follow.

### I.    FACTS AND BACKGROUND

The City and the American Federation of State, County and Municipal Employees, Council 18, Local 3277, AFL-CIO (the "Union") are parties to a Collective Bargaining Agreement ("CBA"). [*See* Record on Appeal ("ROA") 32] The Union filed a Prohibited Practices Complaint ("PPC"), along with a Petition for Temporary Restraining Order and

Preliminary Injunction, on July 31, 2018, alleging that that the City violated provisions of the CBA when it stopped deducting certain Union members' dues from payroll. [*See id.* 2-7, 9-23] The City sought reauthorization for dues deductions from its employees following the U.S. Supreme Court's decision in *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S.Ct. 2448 (U.S. 2018). [*See id.* 41-42] In *Janus*, the Supreme Court considered an Illinois law that forced public employees to subsidize a union even if they choose not to join the union. 138 S.Ct. at 2459-60. The Court held that "this arrangement violates the free speech rights of nonmembers by compelling them to subsidize private speech on matters of substantial public concern." *Id.* at 2460. Thus, "[s]tates and public-sector unions may no longer extract agency fees from nonconsenting employees." *Id.* at 2486.

After *Janus*, the Union requested that the City immediately stop deducting "fair share" fees from non-members. [ROA 38] According to the CBA, "fair share" deductions are deductions of seventy-five percent of membership dues from non-dues paying bargaining unit employees. [*Id.* 35] The Union also informed the City that "[t]he deduction of dues from members of our Union is not affected by the *Janus* decision and is to continue uninterrupted." [*Id.* 38] Subsequently, the City sent a memo to its employees informing them that the United States Supreme Court determined that "fair share" payments deducted from public employees' payroll were unconstitutional and that it would no longer deduct fair share payments from any employees' payroll. [*Id.* 41-42] The City also provided that

> all employees who work in positions covered by a collective bargaining agreement with a union have the option of having **no dues deducted from payroll** or **having full union membership dues deducted**. The decision is one hundred percent (100%) voluntary and no employee shall have any payment deducted unless that employee affirmatively consents to pay full union membership dues.

2

[*Id.*]

It instructed its employees to choose to "opt out," meaning there would be no payroll deduction, or to "opt in," meaning that full union membership dues would be deducted from payroll. [*Id.*] The City provided a form for employees to fill out indicating their choice. [*Id.*] The City sent a follow-up email to its employees on July 17, 2018, reminding them that it was necessary for them to inform payroll of their decision regarding union membership. [*Id.* 39] As a result, the City ceased deducting union members' dues for approximately sixty of the Union's 158 members. [*Id.* 25, 94]

The Union alleged that the City's action in doing so was contrary to Article 7.1 of the CBA, which provides that "[d]uring the life of this Agreement and upon receipt of voluntary authorization for dues deduction card, the City will deduct each pay period, from the pay of each employee who had executed an authorization card, membership dues levied by the Union." [*Id.* 2-7, 35] It also alleged that the City violated Article 7.4 of the CBA, which provides that "[o]nly a letter submitted by the employee and acknowledged by Union President's signature will allow termination of Union membership dues . . . ." [*Id.*]

The Board's Executive Director and Hearing Officer, Thomas Griego, heard oral argument on the Petition for Temporary Restraining Order and Preliminary Injunction on August 17, 2018. [*Id.* 65] Director Griego later issued a Temporary Restraining Order and Preliminary Injunction requiring the City to "continue to honor the parties' collective bargaining agreement, in particular the provisions requiring withholding authorized union dues deductions from its employees' wages and . . . [to] reimburse the union for the difference in dues lost to the union as a result of the City's July 5, 2018 and July 17, 2018 [correspondence to its employees]." [*Id.* 98] The City then moved for a stay and later appealed the temporary restraining order and

preliminary injunction to the Board. [*Id.* 100-106, 108-126] The Board ultimately denied the appeal, ratifying Director Griego's decision to issue a preliminary injunction. [*Id.* 216-218] A hearing on the merits was held on December 17, 2018, and at the hearing, "the parties reached an agreement that the Board enter a final order making the temporary injunction a permanent injunction allowing the parties an immediate appeal to district court." [*Id.* 222-223] The Board entered its Amended Order converting the preliminary injunction to a permanent injunction on January 29, 2019. [*Id.*] The City then filed its timely Notice of Appeal pursuant to Rule 1-074 NMRA.

## II. STANDARD OF REVIEW

Rule 1-074(A) NMRA "governs appeals from administrative agencies to the district court when there is a statutory right of review to the district court." Rule 1-074(R) provides that the district court shall apply the following standards of review:

> (1) whether the agency acted fraudulently, arbitrarily or capriciously;
> (2) whether based upon the whole record on appeal, the decision of the agency is not supported by substantial evidence;
> (3) whether the action of the agency was outside the scope of authority of the agency; or
> (4) whether the action of the agency was otherwise not in accordance with law.

The party appealing bears the burden of showing that the agency's action falls within one of the grounds for reversal set out above. *See Morningstar Water Users Ass'n v. New Mexico Pub. Util. Comm'n*, 1995-NMSC-062, ¶ 9, 120 N.M. 579, 904 P.2d 28.

## III. DISCUSSION

There are two key legal issues between the parties. One is whether the Board has the authority to grant injunctive relief, and the other is whether the Board's decision to grant

injunctive relief is contrary to law based on *Janus*. The Court addresses these two key issues and other miscellaneous issues the City raises, below.

Authority to Grant Injunctive Relief

The City argues that the Board's authority is limited to the imposition of administrative remedies and that injunctive relief is a judicial remedy, as opposed to an administrative remedy. It cites Section 10-7E-9(F) of the Public Employee Bargaining Act (the "Act") in support, which provides that "[t]he board has the power to enforce provisions of the . . . Act through the imposition of appropriate administrative remedies." The City then relies on Black's Law Dictionary which defines an "administrative remedy," in part, as "non-judicial" and an "injunction," in part, as an equitable remedy issued by a court. The City also cites caselaw generally providing that courts have the discretion to grant injunctions. *See Insure New Mexico, LLC v. McGonigle*, 2000-NMCA-018, ¶ 7, 128 N.M. 611, 995 P.2d 1053 ("The granting of an injunction is an equitable remedy, and whether to grant equitable relief lies within the sound discretion of the trial court.").

While the Court is not convinced that the Board is precluded from issuing injunctive relief based on the above definitions or based on caselaw permitting courts to issue injunctive relief, the City's argument ultimately fails because the Act expressly acknowledges that the Board is authorized to issue such relief. Section 10-7E-23(A) of the Act provides that

> [t]he board . . . may request the district court to enforce orders issued pursuant to the Public Employee Bargaining Act, *including those for appropriate temporary relief and restraining orders*. The court shall consider the request for enforcement on the record made before the board or local board. It shall uphold the action of the board or local board and take appropriate action to enforce it unless it concludes that the order is:
>
> (1) arbitrary, capricious or an abuse of discretion;

      (2) not supported by substantial evidence on the record considered as a whole; or

      (3) otherwise not in accordance with law.

(Emphasis added). As the Union points out, in order for the Board to seek enforcement of such an order, it must have the power to issue it in the first place. Thus, Section 10-7A-23(A) recognizes that the Board has the power to issue temporary relief and a restraining order, both of which are types of injunctive relief. *See Luginbuhl v. City of Gallup*, 2013-NMCA-053, ¶ 8, 302 P.3d 751 (describing a writ of prohibition, temporary restraining order, and preliminary injunction as forms of injunctive relief).

      The City appears to read Section 10-7A-23(A) as requiring the Board to seek a court order permitting it to issue an injunction. However, the statute specifically provides that the Board can request the district court to enforce "*orders issued*" pursuant to the Act, meaning an order, including orders for injunctive relief, that the Board has already issued. The statute is also different from provisions in the Workers Compensation Administration Act ("WCAA"), which our Court of Appeals held do not confer upon a workers' compensation judge the authority to issue injunctions. *See Leonard v. Payday Professional/Bio-Cal Comp.*, 2008-NMCA-034, 143 N.M. 637, 179 P.3d 1245. In *Leonard*, the Court of Appeals reasoned that the WCAA does not expressly grant the power to issue injunctive relief and also contemplates the issuance of an injunction in one, limited circumstance, requiring the director of the Workers' Compensation Administration to seek the injunction from district court. *Id.* ¶¶ 12-13 (citing § 52-1-62(A), which "enable[es] the director to seek an injunction in district court when an employer fails to comply with a provision of the Act relating to the filing of a certificate of insurance"). Unlike the WCAA, Section 10-7A-23(A) does not provide that an injunction must be sought in district

court. Rather, assuming an injunction has already been issued, it permits the Board to seek enforcement of it in district court.

The City's remaining arguments are also unpersuasive. The Court is not convinced that an injunction was inappropriate because it addressed an action that already occurred rather than preventing an action from occurring. *See RMCI, General Contractors, Inc. v. Albuquerque Bernalillo County Water Utility Authority*, No. 31,058, slip op. at 3 (N.M. Ct. App. Apr. 17, 2014) ("It is well established that injunctive relief is preventative, prohibitory, or protective."). The City's action in stopping dues deductions was continuous, and the injunction prohibited them from continuing to not deduct member dues pursuant to the CBA. *See Winrock Enterprises, Inc. v. House of Fabrics of New Mexico, Inc.*, 1978-NMSC-038, ¶¶ 16-17, 91 N.M. 661, 579 P.2d 787 (providing that conduct of a continuous nature renders a remedy at law inadequate, warranting injunctive relief). The injunction at issue is thus also not the type of "disfavored" injunction requiring a heightened burden. *See O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004) (providing that the three types of disfavored preliminary injunctions, requiring a heightened burden are: "(1) a preliminary injunction that disturbs the status quo; (2) a preliminary injunction that is mandatory as opposed to prohibitory; and (3) a preliminary injunction that affords the movant substantially all the relief he may recover at the conclusion of a full trial on the merits").

The Court is also not convinced that the Board violated its own procedural rules in granting the injunction. The City contends that it was outside the scope of the Boards' regulations to hear a motion before to the issuance of a scheduling order. While the Board's rules call for a scheduling order and require motions to be filed pursuant to the scheduling order, there was no scheduling order in place when the Union sought the injunction. *See* 11.21.1.16(A)

7

NMAC (requiring the director to hold a scheduling conference "to determine the issues; establish a schedule for discovery, including the issuance of subpoenas, and pretrial motions; and set a hearing date"); 11.21.1.23 NMAC (requiting all written motions to be filed pursuant to the scheduling order). Nothing in the Board's rules prohibits the filing of a motion, or in this case, a Petition for Temporary Restraining Order and Preliminary Injunction, prior to issuance of a scheduling order. Finally, the Court will not consider other decisions of the Executive Director or the Board regarding injunctive relief that were not considered by the Board in the first instance. *See Durham v. Guest*, 2009 -NMSC- 007, ¶ 9, 145 N.M. 694, 204 P.3d 19 (providing that exhibits to briefs that are not part of the record will not be considered on appeal).

*Janus*

The City argues that the Board's decision is contrary to law because *Janus* mandated the action it took in not only ceasing to collect fair share deductions from nonmembers but also in polling the entire bargaining unit, nonmembers and members alike, seeking reauthorization for the payment of any union fees. The City reads *Janus* as restoring employees' First Amendment rights to choose whether to pay any money at all to a labor organization. According to the City, *Janus* is not limited to the payment of fair share fees by nonmembers of the union, but is applicable to the payment of all fees, including full union dues paid by union members. Its position is that it was therefore required to obtain new authorizations for the deduction of union dues from members, because any current authorization was made prior to *Janus*.

However, the specific question before the Court in *Janus* was the First Amendment implications of a state law that forced public employees, who choose not to join a union, to subsidize a union by the payment of "agency fees," which is the functional equivalent of "fair share fees." It was this specific arrangement that violated the free speech rights of "*nonmembers*

by compelling them to subsidize private speech[.]" *Janus*, 138 S.Ct. at 2460 (emphasis added). The Court was explicit in its holding providing that "States and public-sector unions may no longer extract *agency fees* from nonconsenting employees and that "[n]either an agency fee nor any other payment to the union may be deducted from a *nonmember's* wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay. *Id.* at 2486 (emphasis added). *Janus* did not address the payment of union dues by union members. Its holding is clearly limited to the payment of union fees by nonmembers. This interpretation is also consistent with our Attorney General's interpretation of *Janus*, as well as numerous other state attorneys general. [ROA 55-62, 71-83, 161-162]; *see* NM Attorney General Advisory Guidance for Public Sector Employers and Employees after *Janus v. AFSCME Council* 31, 11/9/2018 ("The only change under *Janus* is that public employers may no longer deduct agency fees from a nonmember's wages . . . without the nonmember employee's affirmative consent. All other rights and obligations of public employees and employers remain the same[.]").

The City thus went beyond the scope of *Janus* in seeking reauthorization for the payment of union dues from members of the union. *Janus* does not speak to the payment of dues by union members and thus does not expressly prohibit a public employer from seeking reauthorization. However, the CBA, which governs the relationship between the Union and the City, prohibits the City from terminating union membership dues unless a member submits a letter that is acknowledged by the Union President's signature. It is undisputed that the City terminated certain membership dues based on the form it provided to its employees and not based on an acknowledged letter submitted by any employee.

Requirements for an Injunction

The City argues that Board's issuance of the injunction is contrary to law because the Board did not require the Union to meet a heightened burden and because the harm to the City outweighed any harm to the Union. As previously discussed, the injunction at issue was not the type of injunction that would subject the Union to a heightened burden. And, the City's argument with respect to the harm it suffered by the issuance of injunction is largely premised on its reading of *Janus*, which the Court has rejected.

### IV. CONCLUSION

Based on the foregoing, the Amended Order of the State of New Mexico Public Employee Labor Relations Board is hereby **AFFIRMED**.

**IT IS SO ORDERED.**

*Nancy J. Franchini*
NANCY FRANCHINI
DISTRICT COURT JUDGE

I swear or affirm that the foregoing
document was submitted for e-filing
the 28th day of October, 2019.

10