# EXHIBIT A

2019 WL 5964778
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Shalea OLIVER, Plaintiff,
v.
SERVICE EMPLOYEES INTERNATIONAL
UNION LOCAL 668 et al., Defendants.

CIVIL ACTION No. 19-891
|
Filed November 12, 2019

**Attorneys and Law Firms**

Charles O. Beckley, II, Beckley & Madden, Harrisburg, PA, Daniel R. Suhr, Jeffrey Schwab, Chicago, IL, for Plaintiff.

**MEMORANDUM**

Gerald Austin McHugh, United States District Judge

 *1  This is an action brought in the aftermath of *Janus v. AFSCME*, 138 S. Ct. 2448 (2018), in which a sharply divided Supreme Court significantly altered the structure under which public employee unions operate when it overruled long-standing precedent, declaring the practice of collecting fees from non-member employees unlawful. Plaintiff here, a former union member who resigned from the union after *Janus* was decided, seeks monetary damages against Defendant, Service Employees International Union Local 668 (or the Union), for membership dues paid to the Union from the beginning of her employment in December 2014 through the date of her resignation in August 2018. Although nothing compelled Plaintiff to join the Union, she argues that she cannot have given her "affirmative consent" in her choice to become a member and is now entitled to a full refund of her membership dues. Plaintiff further seeks a declaratory judgment that certain provisions of Pennsylvania's Public Employe Relations Act (PERA) are unconstitutional as applied to her.

The parties have agreed to proceed through cross-motions for summary judgment on a stipulated record.

As to Plaintiff's damages claim, the Union promptly refunded all dues deducted from her pay once she resigned from membership, and there is no factual or legal basis for any refund while she was a member.[1] Furthermore, Plaintiff's damages claim is one for violation of constitutional rights brought under 42 U.S.C. § 1983, and she cannot meet the requirement of state action. Even if she could, the Union would be protected by its good-faith reliance on settled law until *Janus* was decided.

[1] In her complaint, Plaintiff requested damages in the form of (1) all dues paid to the Union before the June 27, 2018, *Janus* decision and (2) all dues paid after the *Janus* decision. The Union has already refunded all dues paid to Plaintiff from the August, 10, 2018 date of her resignation letter, and so Plaintiff effectively seeks a refund of all dues paid prior to that date. I deal with Plaintiff's request for declaratory and injunctive relief regarding exclusive representation in my opinion regarding Plaintiff's claims against the Commonwealth.

As to Plaintiff's claim for declaratory relief with respect to the operation of PERA, she lacks standing, because she was permitted to resign from membership and the current collective bargaining agreement between the Commonwealth and Local 668 does not include the "union security" clause to which she objects. For these reasons, the Union's motion for summary judgment and motion to dismiss will be granted, and Plaintiff's motion for summary judgment will be denied.

**I. Factual Background**

Plaintiff Shalea Oliver is an employee of the Pennsylvania Department of Human Services working as an Income Maintenance Caseworker in the Philadelphia County Assistance Office. Employees at the Philadelphia County Assistance Office are represented in collective bargaining by Local 668, and at the time of Plaintiff's hiring, a Collective Bargaining Agreement (CBA) existed between Local 668 and the Commonwealth as authorized by PERA. The CBA at that time included union security provisions, authorized by 43 P.S. §§ 1101.301(18), 1101.401, and 1101.705, which restricted the window of time in which Local 668 members could withdraw their membership and cease paying full membership dues.

 *2  Upon being hired in December 2014, Plaintiff was presented with a choice as then-sanctioned by the Supreme Court's decision in *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), and PERA: either enroll in Local 668 as a member and have full membership dues deducted regularly from her pay, or decline membership and contribute a reduced amount in the form of agency fees.[2] Plaintiff elected to enroll

as a member in the Union. On June 27, 2018, the Supreme Court issued its opinion in *Janus v. AFSCME*, 138 S. Ct. 2448 (2018), overruling *Abood* and holding that charging agency fees to non-member employees in public sector unions was unconstitutional under the First Amendment. On August 10, 2018, Plaintiff sent a letter to Local 668 announcing her resignation from the Union and requesting the cessation of dues deductions. The Union transmitted the letter to the Commonwealth on September 20, 2018, instructing it to cease deducting dues. When the Commonwealth did not immediately respond, the Union wrote again in November 2018 and January 2019, until the requested action was taken, and Local 668 refunded to Plaintiff the amount deducted in the interim, a total of $287.49. Stipulation ¶¶ 18-23, ECF 35. Plaintiff is no longer a member of Local 668 and does not pay any dues to the Union.

2   Agency fees, or "fair share" fees, were reduced payments that public sector unions could collect from non-member employees solely for the purposes of fulfilling their collective bargaining obligations. The levying of agency fees had been endorsed by *Abood* as a method for, *inter alia*, preventing non-members from "free riding" off of unions' efforts to obtain benefits for all represented employees, while also recognizing non-members' First Amendment rights to refrain from subsidizing ideological activity they were opposed to. *Abood*, 421 U.S. at 221-22. Workplaces governed by CBAs that allow for the collection of agency fees are known as agency shops.

Following *Janus*, Local 668 and the Commonwealth entered into a Side Letter effective April 2, 2019, modifying the CBA and effectively nullifying the union security provisions it contained by allowing members to resign at any time from that date forward. The Side Letter has since been superseded by a new CBA which lacks any union security provisions.

### II. Standard of Review

Plaintiff and Local 668 have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). A grant of summary judgment is appropriate "if, drawing all inferences in favor of the nonmoving party, the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). The parties have submitted stipulated facts and agree that there are no genuine issues of material fact present in this case.

Local 668 has also filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(h)(3), on the basis that Plaintiff lacks standing to pursue its claims for declaratory relief as to the application of 43 P.S. §§ 1101.301(18), 1101.401, and 1101.705. Rule 12(h)(3) provides: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

### III. Discussion

#### A. Plaintiff's Voluntary Choice to Join Local 668 Defeats Her Claim for Damages

When Plaintiff was hired, PERA made clear that she was not obligated to join the Union:

"It shall be lawful for public employes to organize, form, join or assist in employe organizations... and such employes shall also have the right to refrain from any or all such activities." [3] 43 P.S. § 1101.401. It is difficult to comprehend how Plaintiff can complain that she was compelled to join the Union in violation of her First Amendment right of free association. [4] There was no legal compulsion for her to join, and the economic advantage in declining membership and paying an agency fee would have been self-evident. [5] Plaintiff contends that if only she had known of a constitutional right to pay nothing for services rendered by the Union—despite knowledge of her right at the time to refuse membership and pay less— she would have declined union membership completely. I can discern no logic in such a position. Plaintiff has not alleged she was actively pressured to join, and the Supreme Court has held that that background social pressure employees may feel to join a union is "no different from the pressure to join a majority party that persons in the minority always feel" and "does not create an unconstitutional inhibition on associational freedom." *Knight v. Minnesota Community College Faculty Association*, 465 U.S. 271, 290 (1984). Not surprisingly, other courts have held that "[w]here the employee has a choice of union membership and the employee chooses to join, the union membership money is not coerced. The employee is a union member voluntarily." *Kidwell v. Transportation Communications Int'l Union*, 946 F.2d 283, 292-93 (4th Cir. 1991). *Accord Farrell v. IAFF*, 781 F. Supp. 647, 649 (N.D. Cal. 1992).

3   The irregular spelling "employe" appears in public sector labor law statutes of other states as well. The Wisconsin Court of Appeals examined this anomaly with respect to its own statute and determined that it resulted from a deliberate decision made by the statute's original drafter to prevent typographical errors: "Since 'e' and 'r' are right next to each other on the typewriter keyboard, there's a real risk that 'employer' might be typed 'employee,' and vice-versa." *Richland Sch. Dist. v. Dep't of Indus., Labor & Human Relations, Equal Rights Div.*, 479 N.W.2d 579, 583 n.1 (Wis. Ct. App. 1991).

4   At the Rule 16 Conference, Plaintiff's Counsel was unable to identify any values exemplified by the Union or any positions it has taken that were objectionable to Plaintiff.

5   The parties have stipulated that agency fees would have amounted to 56.1 percent of full union dues. Stipulated Facts ¶ 13.

 **\*3**  In codifying Plaintiff's right to refrain from joining the Union, PERA was following Supreme Court precedent established long before *Janus*. The "First Amendment right to opt out of union membership was clarified in 1977 [by *Abood*]," with the result that an employee's decision to join a union thereafter must be viewed as voluntary. *Smith v. Sup. Ct., Cty. of Contra Costa*, 2018 WL 6072806, at \*1 (N.D. Cal. Nov. 16, 2018). Nothing in *Janus* suggests otherwise; in fact, the plaintiff there had invoked his right not to join the defendant union and was an agency-fee payer.

In further analyzing whether Plaintiff's decision to join the union was voluntary, it is important to bear in mind the relationship between Plaintiff and the Union was contractual in nature. [6] A subsequent change in the law does not permit a party to a contract who has enjoyed the benefit of the bargain to rescind it with the benefit of hindsight. *See Coltec Industries, Inc. v. Hobgood*, 280 F.3d 262, 274-75 (3d Cir. 2002) (declining to allow party to revisit settlement agreement because of a change in background law, holding that it chose to do so "exchange for valuable consideration" and "must bear the consequences of its informed, counseled and voluntary decision"); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) ("Of particular concern in *Coltec* was the belief that the company was attempting to escape the consequences of a bargain it regretted in hindsight."). As the Union points out, even in the profoundly serious context of plea agreements in criminal cases, a later development in the law benefiting a defendant does not permit that defendant to revoke a plea. *Brady v. United States*, 397 U.S. 742, 756-57 (1970); *United States v. Johnson*, 67 F.3d 200, 201-02 (9th Cir. 1995).

6   "Unless the rule or its enforcement impinges on some policy of the federal labor law, the regulation of the relationship between union and employee is a contractual matter governed by local law." *Scofield v. NLRB*, 394 U.S. 423, 426 n.3 (1969); *see also Int'l Ass'n of Machinists v. Gonzales*, 356 U.S. 617, 618 (1958) (holding the "contractual conception of the relation between a member and his union widely prevails in this country"); *James v. Int'l Bhd. of Locomotive Engineers*, 302 F.3d 1139, 1146 (10th Cir. 2002) ("It is well settled that the relationship existing between a trade union and its members is contractual and that the constitution ... constitute[s] a binding contract.") (citations omitted).

Given the strength of these principles and their applicability to this context, federal courts have been unanimous in rejecting claims brought by former union members seeking to rescind membership retroactively. *Bermudez v. SEIU Local 521*, 2019 WL 1615414, at \*2 (N.D. Cal. Apr. 16, 2019); *Belgau v. Inslee*, 359 F. Supp. 3d 1000, 1016 (W.D. Wash. 2019); *Cooley v. Cal. Statewide Law Enforcement Ass'n.*, 2019 WL 331170, at \*3 (E.D. Cal. Jan. 25, 2019); *Smith v. Sup. Ct., Cty. of Contra Costa*, 2018 WL 6072806, at \*1 (N.D. Cal. Nov. 16, 2018); *Seager v. UTLA*, 2019 WL 3822001, at \*2 (C.D. Cal. Aug. 14, 2019); *Babb v. California Teachers Assn.*, 378 F. Supp. 3d 857, 877 (C.D. Cal. 2019).

Plaintiff may now regret the bargain she struck with the Union by choosing to become a member, but such later regret does not suffice to show that her past choice was unlawfully coerced or compelled. The facts to which the parties have stipulated cannot support a claim that Plaintiff was compelled to associate with Local 668 in violation of her First Amendment rights. [7]

7   Agency fees are not at issue in this case, because they would be subsumed by the union dues that Plaintiff voluntarily paid. Even if they were, no federal court has interpreted *Janus* as entitling non-members to a refund of agency fees. *See Cook v. Brown*, 364 F. Supp. 3d 1184, 1193 (D. Or. 2019) (noting that "there is no indication that *Janus* intended to open the floodgates to retroactive monetary relief"); *Hough v. SEIU Local 521*, 2019 WL 1785414, at\*1 (N.D. Cal. Apr. 16, 2019); *Babb v. California Teachers Association*, 378 F. Supp. 3d at 876 (C.D. Cal. 2019); *Wholean v. CSEA Local 2001*, 2019 WL 1873021, at \*3 (D. Conn. April 26, 2019); *Bermudez v. SEIU, Local 521*, 2019 WL 1615414, at

\*1 (N.D. Cal. Apr. 16, 2019); *Mooney v. Illinois Educ. Ass'n.*, 372 F. Supp. 3d 690, 707 (C.D. Ill. 2019); *Janus v. AFSCME*, ––– F.3d ––––, 2019 WL 5704367, at \*11-12 (7th Cir. Nov. 5, 2019).

### B. 42 U.S.C. § 1983 and State Action

**\*4** Even assuming for the sake of discussion that Plaintiff were able to show that her choice to join Local 668 was somehow unlawfully compelled, she would not be able to vindicate her rights against the Union through a § 1983 suit because the Union was not acting under "color of state law." In determining whether the conduct at issue was taken under the color of state law, courts determine whether the action may "be fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). There are two prongs to the "fair attribution" test: first, the conduct responsible for the alleged deprivation must have been "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible"; and second, "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.*; *see also American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting both prongs of *Lugar* test). Plaintiff satisfies the first part of the fair attribution test. The Commonwealth has established an intricate and thorough statutory scheme governing public sector collective bargaining through PERA. Although it is true that Plaintiff was not compelled under PERA to become a member of the Union, Local 668 was only able to lawfully collect membership dues from Plaintiff and other employees through authorization conferred by PERA.

Plaintiff's claim founders, however, at the second part of the test, as Local 668 is not a "state actor" for the purposes of § 1983. In determining whether a party is a state actor under § 1983, the Third Circuit applies Fourteenth Amendment state action doctrine. *Leshko v. Servis*, 423 F.3d 337, 339 (3d. Cir 2005) ("We consider actions 'under color of law' as the equivalent of 'state action' under the Fourteenth Amendment.").[8] The primary question guiding the inquiry is whether "there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.' " *Id.* at 340 (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).[9] *Leshko* further refined the inquiry by identifying two factual categories of cases that may constitute state action, those involving activities and those involving actors. Under *Leshko*, a private party that undertakes "an *activity* that is significantly encouraged by the state or in which the state acts as a joint participant" would be a state actor under § 1983. *Id.* at 340. "Determining state action in such cases requires tracing the activity to its source to see if that source fairly can be said to be the state." *Id.* Stated differently, "[t]he question is whether the fingerprints of the state are on the activity itself." *Id.* Alternatively, "an *actor* that is controlled by the state, performs a function delegated by the state, or is entwined with government policies or management" can implicate § 1983 state action doctrine. *Id.*

[8] The defendants in *Leshko* were former foster parents to the plaintiff, and the foster care program is governed by Pennsylvania state law and regulations. *See* 55 Pa. Code §§ 3700 et. seq; 42 Pa. §§ 6301 et. seq. As such, the *Leshko* Court's understandably focused on the second prong of *Lugar's* fair attribution test, whether the parents were state actors for the purpose of § 1983 liability. Th e first prong of the *Lugar* test was easily satisfied.

[9] It is worth echoing the Third Circuit's characterization of state action doctrine as "labyrinthine." *Leshko*, 423 F.3d at 338. Even while articulating the inquiry in terms of there existing a close nexus between the state and the challenged action, the *Leshko* Court acknowledged there is "no 'simple line' between states and private persons." *Id.* at 339. In *Kach v. Hose*, 589 F.3d 626, 646 (3d. Cir. 2009), the Third Circuit reaffirmed *Leshko's* formulation of the inquiry but made additional reference to "three broad tests generated by Supreme Court jurisprudence" that it had outlined in an earlier case, *Mark v. Borough of Hatboro*, 51 F.3d 1137 (3d. Cir. 1995). As formulated by *Mark* and *Kach*, these tests are: (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials"; and (3) whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach*, 589 F.3d at 646 (quoting *Mark*). In my view, the *Leshko* Court's categorization of state action cases, along with the fair attribution test laid out by *Lugar*, are largely complementary with the criteria that comprise the "broad tests" previously identified by the Third Circuit in *Mark* and *Kach*. Furthermore, both *Leshko* and *Kach* emphasize that the state action inquiry is fact-specific, and thus resistant to fixed categorization. *Leshko*, 423 F.3d at 339; *Kach*, 589 F.3d at 646.

**\*5** It is simple to dispense with the second category of cases identified by *Leshko*. Local 668 is not an actor controlled by the state, is not performing a function delegated by

the state, and is not entwined with government policies or management. The leadership, bylaws, operations, and priorities of Local 668 are all determined by its membership, not by the Commonwealth. Local 668 has not been delegated any state functions, nor does it rely upon material resources from the state in carrying about its own activities. Additionally, although public sector collective bargaining is sanctioned by the Commonwealth, Local 668 does not play a managerial role in shaping government policies or management decisions; to the contrary, it negotiates with the Commonwealth in an adversarial posture on behalf of its membership. All these facts would indicate that Local 668 is not a state actor under *Leshko*.

In determining whether the *activity* of enrolling public sector employees as members pursuant to agency shop provisions constitutes state action, Local 668 emphasizes that public sector employees had and continue to have the option of joining or refraining from joining unions as members. Moreover, as Local 668 correctly observes, it is unlawful for the Commonwealth or public sector unions to coerce employees into becoming members, because PERA confers a statutory right on employees to abstain from taking part in union activity. These arguments reinforce the fact that the state cannot be said to putting its thumb on the scale in promoting union membership enrollment. Weighing against the Union's position is the broader structural context through which Local 668 and the Commonwealth interact in the collective bargaining process. Local 668 is only able to organize, enroll, and collect dues from members insofar as it has been authorized to do so by PERA, and the Commonwealth is authorized to deduct dues payments from employee paychecks.

None of these facts, however, rise to the level required to find that the Commonwealth is a "joint participant" for the purposes of state action under § 1983. The Third Circuit has analyzed this question with respect to the National Labor Relations Act (NLRA), a statute analogous to PERA in many respects, squarely holding that "state action is not present" in circumstances involving "actions taken by a union pursuant to an agency-shop provision in a collective bargaining agreement." *White v. Communications Workers of America, AFL-CIO, Local 1300*, 370 F.3d 346, 349-50 (3d Cir. 2004). In doing so, the *White* Court adopted the analysis of the District of Columbia Circuit in an earlier case, *Kolinske v. Lubbers*, 712 F.2d 471 (D.C. Cir. 1983), which had found that the NLRA's authorization of agency shop provisions did not amount to state action because the "NLRA does not mandate the existence or content of, for example, seniority clauses, work rules, staffing requirements, or union security provisions like agency shop clauses or mandatory payroll deductions for union dues," and "the parties, like any two parties to a private contract, were still free to adopt or reject an agency shop clause" in their CBA. *Id.* at 478. [10] Both plaintiffs in those cases were unsuccessful in arguing that the NLRA's authorization of agency shop provisions in CBAs was enough to satisfy § 1983's state action requirements.

[10] Plaintiff cites to *Abood*, *Beck v. Communications Workers of America*, 776 F.2d 1187 (4th Cir. 1985), and *Linscott v. Millers Falls Co.*, 440 F.2d 14 (1st Cir. 1971), for the proposition that a public-sector union acting pursuant to an agency shop agreement authorized by statute is "state action." But within this circuit, *White* controls, and the *White* Court explicitly noted a split among the circuits and chose to follow *Kolinske*. *White*, 350 F.3d at 353. It is also important to note that the cases on which *Abood* relied, *Employes' Dept. v. Hanson*, 351 U.S. 225 (1956) and *Machinists v. Street*, 367 U.S. 740 (1961), were concerned with the Railway Labor Act ("RLA"), which goes further than the NLRA or PERA by not merely permitting parties to bargain for agency shop agreements, but also preempting any state laws that might otherwise seek to prevent parties from agreeing to implement union shop provisions, which require union membership as a condition of employment. 45 U.S.C. § 152 subd. 11.

**\*6** Although *White* and *Kolinske* did not involve public employee unions, their shared rationale also has logical force in this context. Like its NLRA counterpart, PERA does not mandate the inclusion of agency shop provisions in agreements negotiated between the Commonwealth and public sector unions, but instead merely authorizes them. The fact that the parties availed themselves of the collective bargaining procedures established by PERA is not sufficient to establish state action. Finding otherwise would contradict the principles of *White*.

In searching for additional avenues to bolster its argument that state action is present, Plaintiff cites to several cases which hold that dues authorization constitutes a contract between the employee and the employer, not the Union. Pl.'s Resp. to Mot. for Summ. J. at 3-4, ECF 39; *see, e.g.*, *Int'l Ass'n of Machinists Dist. Ten v. Allen*, 904 F.3d 490, 492 (7th Cir. 2018) ("A dues-checkoff authorization is a contract between an employer and employee for payroll deductions....The union itself is not a party to the authorization."). [11] If dues deduction

authorizations are properly considered as two-party contracts between the employee and the employer, Plaintiff reasons, then state action must necessarily be implicated.

11    *See also NLRB v. Atlanta Printing Specialties & Paper Prods. Union*, 523 F.2d 783, 785 (5th Cir. 1975); *NLRB v. U.S. Postal Serv.*, 827 F.2d 548, 554 (9th Cir. 1987).

I find this view of dues-deduction provisions unrealistic and artificial, because once the Commonwealth has issued a wage payment under the CBA to its employee it has no beneficial interest in any portion of those wages. In deducting dues from the employee's pay it is simply acting as a transfer agent carrying out the separate agreement between the union and its member. Such an arrangement is, as the National Labor Relations Board has found, accurately described as a third-party assignment of a right:

> A check-off authorization is that special form of contract defined in the Restatement 2d, *Contracts* Section 317 (1981), as an "assignment of a right." More specifically, a checkoff authorization is a partial assignment of a future right, that is, an employee (the assignor) assigns to his union (the assignee) a designated part of the wages he will have a right to receive from his employer (the obligor) in the future, so long as he continues his employment. The employer is thereby authorized to pay the specified amounts to the union when the employee's right to wage payments accrues.

*IBEW Local No.2088 (Lockheed Space Operations)*, 302 N.L.R.B 322, 327 (1991) (internal citations omitted).

The union's right to collect the dues is not created by the Commonwealth; it is created by the union's contract with its members. The Commonwealth's role as employer role is strictly ministerial, implementing the instructions of the employee. The union would ultimately collect its due regardless, but by some other means. It cannot credibly be said that by affording the convenience of a dues check-off a public employer is "significantly encouraging" the assignment or that the employer is its "source" under *Leshko*. As a result, the Union is not involved in state action by collecting dues pursuant to an agency-shop agreement with the employer. [12]

12    In *Janus v. AFSCME*, ––– F.3d ––––, 2019 WL 5704367 at *7 (7th Cir. Nov. 5, 2019), following remand, the Seventh Circuit recently reached a different conclusion as to state action even as it rejected the plaintiff's claim for a refund of his agency fee payments. But I am bound by *White*, and in any event do not find the Seventh Circuit's analysis persuasive for the reasons set forth above.

### C. Good-Faith Defense

*7 Even if there were sufficient state action to permit a § 1983 suit against the Union to proceed, Local 668 would nonetheless prevail based upon its good-faith belief that it was complying with statutory and constitutional law prior to *Janus*. Numerous federal courts have held that good-faith reliance on prior precedent defeats refund claims brought in the aftermath of *Janus*. [13] The Third Circuit, following the Fifth Circuit's lead, has found that "private defendants should not be held liable under § 1983 absent a showing of malice and evidence that they either knew or should have known of the statute's constitutional infirmity." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1274 n.29 (3d Cir. 1994) (quoting *Wyatt v. Cole*, 994 F.2d 1113, 1120 (5th Cir. 1993)). Under the Third Circuit's standard, Plaintiff would need to prove that the union had a "subjective" understanding that it was violating her rights or displayed "gross negligence" in maintaining a belief that its conduct was lawful. *Jordan*, 20 F.3d at 1277-78. [14]

13    *See, e.g.*, *Janus v. AFSCME*, ––– F.3d ––––, 2019 WL 5704367 (7th Cir. Nov. 5, 2019); *Danielson v. AFSCME Council 28*, 340 F. Supp. 3d 1083, 1086 (W.D. Wash. 2018); *Carey v. Inslee*, 364 F. Supp. 3d 1220, 1232 (W.D. Wash. 2019); *Cook v. Brown*, 364 F. Supp. 3d 1184, 1193 (D. Or. 2019); *Crockett v. NEA-Alaska*, 367 F. Supp. 3d 996, 1006 (D. Alaska 2019); *Hough v. SEIU Local 521*, 2019 WL 1274528 at *1 (N.D. Cal. Mar. 20, 2019), *amended*, 2019 WL 1785414 (N.D. Cal. Apr. 16, 2019); *Lee v. Ohio Educ. Ass'n*, 366 F. Supp. 3d 980, 981 (N.D. Ohio 2019); *Mooney v. Illinois Educ. Ass'n*, 372 F. Supp. 3d 690, 706 (C.D. Ill. 2019); *Bermudez v. SEIU Local 521*, 2019 WL 1615414 at *1 (N.D. Cal. Apr. 16, 2019); *Akers v. Maryland Educ. Ass'n*, 376 F. Supp. 3d 563, 572

(D. Md. 2019); *Wholean v. CSEA SEIU Local 2001*, 2019 WL 1873021 at *3 (D. Conn. Apr. 26, 2019); *Babb*, 378 F. Supp. 3d at 870; *Hernandez v. AFSCME Cal.*, 386 F. Supp. 3d 1300, 1304 (E.D. Cal. 2019); *Diamond v. Pa. State Educ. Ass'n*, 2019 WL 2929875 at *29 (W.D. Pa. July 8, 2019); *Ogle v. Ohio Civil Svc. Employees Ass'n, AFSCME, Local 11*, 397 F. Supp. 3d 1076, 1087-88 (S.D. Ohio 2019).

14  Though some courts and commentators have looked to common law tort analogues to determine whether and how the good-faith defense should apply to private parties sued under § 1983, the Third Circuit has not required such an approach and it not my place to adopt one.

Plaintiff will not be able to do so on the record here. The CBA's agency shop provisions were lawful under PERA, and more importantly, were sanctioned by the Supreme Court in *Abood*. Their constitutionality had been considered and upheld by the Supreme Court multiple times after *Abood*, including most recently in *Harris v. Quinn*, 573 U.S. 616 (2014). As noted at the outset, *Janus* was decided by a five-to-four majority, with a powerful dissent grounded in the doctrine of *stare decisis*. Against that background it would be unreasonable to hold that the Union should have known of the constitutional infirmity of agency shop provisions.

### D. Plaintiff's Claims for Declaratory Relief Are Moot

Finally, Plaintiff's claims for declaratory and injunctive relief regarding the application of 43 P.S. §§ 1101.301(18), 1101.401, and 1101.705 suffers from lack of standing and mootness. As Plaintiff is no longer a member of the Union, she has no cognizable interest in determining the constitutionality of the union security provisions, and an opinion rendered by me on the issue would be advisory.[15] *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). As to mootness, Plaintiff obtained relief even before the Side Letter was negotiated. Plaintiff cites Paragraph 5 of the the Side Letter to suggest that the Commonwealth is required to deduct dues regardless of the employee's wishes. But this is intellectually dishonest because it ignores Paragraphs 6 through 8, which make clear that the opposite is true. Side Letter, ECF 26-6. Moreover, the parties have stipulated that the CBA in effect at the time has been superseded by an amended CBA, which does not have a "maintenance of membership" provision. Stipulation ¶ 7. Finally, as noted in my memorandum dismissing claims against the Commonwealth, because the Commonwealth has no institutional incentive to lend support to the Union, there is no reasonable basis for suggesting that a violation might recur.

15  Plaintiff's citation to *Knox v. SEIU, Local 1000*, 567 U.S. 298 (2012) is inapposite. In *Knox*, the union levied a special assessment on non-members. Some non-members sued the union to obtain a refund: the district court found in favor of the plaintiffs but the Ninth Circuit reversed. After the Supreme Court granted certiorari, SEIU voluntarily refunded plaintiffs the assessments in an effort to render their claims moot. Here, Plaintiff resigned her membership several months before bringing her suit, and thus lacks standing to have her claims heard before this court. Furthermore, the Union and the Commonwealth have since removed the union-security provisions at issue in the current CBA between them.

### IV. Conclusion

 ***8** Plaintiff's claim for damages suffers from multiple defects, the most significant of which is that the record cannot support a conclusion that she was in any sense compelled to join the Union. Furthermore, Plaintiff is no longer a member of the Union and the current CBA does not contain any union security provisions, creating issues as to both standing and mootness. Accordingly, I grant both Local 668's Motion for Summary Judgment and its Motion to Dismiss, and deny Plaintiff's Motion for Summary Judgment.

**All Citations**

--- F.Supp.3d ----, 2019 WL 5964778

**End of Document**                      © 2019 Thomson Reuters. No claim to original U.S. Government Works.