# EXHIBIT B

2019 WL 5963226
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

SHALEA OLIVER, Plaintiff,
v.
SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 668 ET AL., Defendants.

CIVIL ACTION No. 19-891
|
11/12/2019

Gerald Austin McHugh, United States District Judge

**McHUGH, J. NOVEMBER 12, 2019**

### MEMORANDUM

**\*1** This is an action brought in the aftermath of *Janus v AFSCME*, 138 S. Ct. 2448 (2018), in which a sharply divided Supreme Court significantly altered the structure under which public employee unions operate when it overruled long-standing precedent, and declared the practice of collecting fees from non-member employees unlawful. Plaintiff here, a former union member who resigned after *Janus* was decided, seeks monetary and injunctive relief from the Commonwealth of Pennsylvania for alleged violations of her First Amendment rights, including a complete refund of her membership dues and an end to public sector exclusive bargaining. Because she can neither show an ongoing controversy as to her claims against the Commonwealth, nor show that *Janus* has made exclusive bargaining unlawful, the Commonwealth Defendants are entitled to judgment as a matter of law.

### I. Factual Background

Plaintiff Shalea Oliver is an employee of the Pennsylvania Department of Human Services working in the Philadelphia County Assistance Office. Employees at the Philadelphia County Assistance are represented in collective bargaining by Service Employees International Union Local 668, and at the time of Plaintiff's hiring, a Collective Bargaining Agreement (CBA) existed between Local 668 and the Commonwealth, as authorized by Pennsylvania's Public Employe Relations Act (PERA). [1]

---

[1] The irregular spelling "employe" appears in public sector labor law statutes of other states as well. The Wisconsin Court of Appeals examined this anomaly with respect to its own statute and determined that it resulted from a deliberate decision made by the statute's original drafter to prevent typographical errors: "Since 'e' and 'r' are right next to each other on the typewriter keyboard, there's a real risk that 'employer' might be typed 'employee,' and vice-versa." *Richland Sch. Dist. v. Dep't of Indus., Labor & Human Relations, Equal Rights Div.*, 479 N.W.2d 579, 583 n.1 (Wis. Ct. App. 1991).

Upon being hired in December 2014, Plaintiff was presented with a choice as then-sanctioned by the Supreme Court's decision in *Abood v. Detroit Board of Ed.*, 431 U.S. 209 (1977), and PERA: either enroll in Local 668 as a member and have full membership dues deducted regularly from her pay, or decline membership and have a lesser amount deducted from her pay in the form of an "agency fee" to account for the services the Union provided in protecting her financial interests. Plaintiff chose to enroll as a member in the Union, paying full membership dues. [2] On June 27, 2018, by a 5-to-4 majority, the Supreme Court issued its opinion in *Janus v. AFSCME*, 138 S. Ct. 2448 (2018), overruling *Abood* and holding that charging agency fees to non-member employees in public sector unions was unconstitutional under the First Amendment. On August 10, 2018, Plaintiff sent a letter to Local 668 announcing her resignation from the Union and requesting the cessation of dues deductions. After being notified by Local 668 of Plaintiff's request, the Commonwealth stopped deducting dues from Plaintiff's paychecks in January 2019. Local 668 then refunded the money deducted from Plaintiff's paychecks from the date of Plaintiff's letter to the time the Commonwealth suspended the deductions. Plaintiff is no longer a member of Local 668 and does not currently pay any dues or agency fees to the Union.

---

[2] Plaintiff contends that her choice to join the Union cannot be deemed voluntary. That contention will be separately addressed in a memorandum opinion dealing with her claims against Local 668.

### II. Standard of Review

**\*2** Plaintiff and the Commonwealth have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). A grant of summary judgment is appropriate "if, drawing all inferences in favor of the nonmoving party, the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). The parties have submitted a statement of undisputed facts, ECF 35, and agree that there are no genuine issues of material fact.[3]

[3] The parties were granted leave to conduct discovery but have not cited to anything beyond the stipulated facts.

**III. Discussion**

In Count I of the complaint, Plaintiff asserts that Commonwealth Defendants and Local 668 violated her rights to free speech and freedom of association under the First Amendment by collecting membership dues from her. Plaintiff argues that she did not provide the Defendants her "affirmative consent" so as to waive her First Amendment right to refrain from contributing money to Local 668, either as a member or a non-member. In Count II of the complaint, Plaintiff contends that her First Amendment rights to free speech and freedom of association continue to be impinged by the system of exclusive representation effectuated by PERA, which requires a single union representative to bargain on behalf of a represented group of public sector workers. Although she is no longer a member of Local 668, Plaintiff argues that she is still unlawfully compelled to associate with the Union based on its status as her bargaining unit's exclusive representative.

In moving for summary judgment, the Commonwealth makes two arguments: (1) Plaintiff's claims under Count I are moot or otherwise barred by sovereign immunity, and (2) Plaintiff's claims under Count II cannot succeed because exclusive representation does not violate Plaintiff's First Amendment rights. I agree with the Commonwealth that Plaintiff's claims under Count I are moot, and further agree that Plaintiff's Count II claims fail because *Janus* has not rendered public sector exclusive representation unconstitutional. Its motion will therefore be granted and Plaintiff's cross-motion denied.

**A. Plaintiff's Claims Under Count I are Moot**
Federal courts lack jurisdiction where no real controversy exists. Thus, if the issues presented are "no longer live," the case is moot. *Brown v. Philadelphia Housing Authority*, 350 F.3d 338, 343 (3d Cir. 2003). "The doctrine of mootness requires that 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.' " *Id*. (quoting *New Jersey Turnpike Authority v. Jersey Cent. Power*, 772 F.2d 25, 31 (3d Cir. 1985)). Thus, "[a] case may become moot if (1) the alleged violation has ceased, and there is no reasonable expectation that it will recur, and (2) interim relief or events have 'completely and irrevocably eradicated the effects of the alleged violation.' " *Finberg v. Sullivan*, 658 F.2d 93, 97-98 (3d Cir. 1980) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

The question before me is whether Plaintiff has alleged the existence of any ongoing violations, or, if the violations alleged have ceased, whether Plaintiff might reasonably expect the violation to recur. The party asserting mootness bears a heavy burden to show the case is moot. *Seneca Res. Corp. v. Twp. of Highland*, 863 F.3d 245, 254 (3d Cir. 2017). But on the record here, the Commonwealth has met that burden because Plaintiff's rights are not currently being violated and the Commonwealth has shown that potential future violations are highly unlikely to occur.

**\*3** Plaintiff seeks declaratory relief against the Commonwealth that its applications of 43 P.S. §§ 1101.301(18), 1101.401, and 1101.705 in PERA, which all concern "maintenance of membership" provisions in CBAs between the Commonwealth and representative employee organizations, are unconstitutional. 43 P.S. § 1101.301(18) defines such provisions as follows:

> "Maintenance of membership" means that all employes who have joined an employe organization or who join the employe organization in the future must remain members for the duration of a collective bargaining agreement so providing with the proviso that any such employe or employes may resign from such employe organization during a period of fifteen days prior to the expiration of any such agreement.

43 P.S. § 1101.401 outlines the scope of employee rights under PERA:

> It shall be lawful for public employes to organize, form, join or assist in employe organizations or to engage in lawful concerted activities for the purpose of collective bargaining

> or other mutual aid and protection or to bargain collectively through representatives of their own free choice and such employes shall also have the right to refrain from any or all such activities, except as may be required pursuant to a maintenance of membership provision in a collective bargaining agreement.

Taken together, these sections of PERA permit CBAs between the Commonwealth and employee organizations such as unions to include time restrictions specifying when an employee has the right to resign from membership. They do not, however, *require* all CBAs to include maintenance of membership provisions. This is further clarified by a separate provision of the statute, § 1101.705:

> Membership dues deductions and maintenance of membership are proper subjects of bargaining with the proviso that as to the latter, the payment of dues and assessments *while members*, may be the only requisite employment condition (emphasis added).

Plaintiff mischaracterizes PERA as binding all employee members of public unions by maintenance of membership provisions, when in fact the statute goes no further than to recognize that maintenance of membership provisions are a proper subject of collective bargaining.

This is an important distinction, as reflected by the facts of this case. The previous CBA between the Commonwealth and Local 668, effective from July 1, 2016 to June 30, 2019, included a maintenance of membership provision limiting the timeframe within which members could resign from the Union. In reaction to *Janus*, however, the Commonwealth and the Union agreed to amend the CBA through a Side Letter on April 2, 2019. The Side Letter allowed any member of Local 668 to withdraw membership at any time. The Commonwealth, in turn, agreed to cease deducting dues from former members' pay upon notification by Local 668. The Side Letter did not conflict with or purport to override the statutory scheme created by PERA regarding maintenance of membership provisions; to the contrary, it was executed pursuant to 43 P.S. § 1101.705, altering the terms of the CBA to comply with *Janus*. In short, Plaintiff's argument that the issue is not moot because the Side Letter cannot overcome the statute fails because it is premised upon Plaintiff's misreading of the statute.

Furthermore, as a factual matter PERA did not preclude Plaintiff from resigning, as even before the Side Letter was negotiated and the CBA was amended her wishes were honored and her dues refunded. Plaintiff sent a letter of resignation on August 10, 2018. The Union transmitted the letter to the Commonwealth on September 20, 2018, instructing it to cease deducting dues. When the Commonwealth did not immediately respond, the Union wrote again in November 2018 and January 2019, until the requested action was taken, and Local 668 refunded to Plaintiff the amount deducted in the interim, a total of $287.49. Stipulation ¶¶ 18-23, ECF 35. In summary, the Union acted promptly, persisted when the Commonwealth did not immediately respond, and returned dues erroneously collected. Any violation of Plaintiff's First Amendment rights was limited in time, and quickly redressed.

**\*4** Finally, the Plaintiff's misreading of the statute is confirmed by the fact that the new CBA negotiated post-*Janus* does not have any maintenance of membership provision. Stipulation ¶7, ECF 35.

Plaintiff attempts to overcome the lack of present harm by arguing that her claim is capable of repetition but evading review, invoking the principle that declaratory relief is appropriate where there is "governmental action directly affecting, and continuing to affect, the behavior of citizens in our society." Pl.'s Resp. to Commonwealth MSJ at 7, ECF 31 (quoting *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 125 (1974)). As an initial matter, it should be noted that the Supreme Court has since narrowed the breadth of *Super Tire*, holding that "the capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). Plaintiff has pointed to nothing that would suggest the Commonwealth is undertaking action or likely to undertake action that would contravene *Janus*. The conduct of both the Union and the Commonwealth to this point weighs strongly against any such an eventuality.

In that regard, the Commonwealth and the Union are typically in an adversarial posture, both at the bargaining table and with respect to employee discipline and termination. *Janus* is a decision that indisputably weakens unions of public employees. The Commonwealth has no incentive whatsoever to undermine the substantial institutional advantage *Janus* confers, rendering the likelihood of any future violation nil.

As a result, Plaintiff's claims for declaratory relief against the Commonwealth under Count I of her complaint are moot, and accordingly, this Court does not have subject matter jurisdiction to hear them.[4]

[4] Plaintiff's monetary claims against Local 668 will be addressed in a separate opinion.

### B. Public Sector Exclusive Representation Remains Lawful After *Janus*

Plaintiff's claims under Count II of her complaint seeking injunctive relief cannot succeed either, for her federal rights are not violated by the system of exclusive representation enacted by PERA. Although Plaintiff does not explicitly say so in her briefing, she appears to be invoking the *Ex parte Young* exception to Eleventh Amendment immunity in seeking equitable relief against the Commonwealth defendants, in the form of a declaration that public sector exclusive representation is unconstitutional.[5] To that end, Plaintiff has not sued the Commonwealth as a defendant directly, but rather has named the Secretary of the Pennsylvania Department of Human Services, the Secretary of the Office of Administration, the Pennsylvania Attorney General, and members of the Pennsylvania Labor Relations Board as defendants in their official capacities and has sought declaratory relief against them. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 697 (3d Cir. 1996) ("[T]he state official, although formally acting in an official or representative capacity, may nevertheless be sued in federal court.").

[5] The Commonwealth Defendants have raised Eleventh Amendment sovereign immunity defenses to Plaintiff's claims to which Plaintiff has failed to respond, but I will nevertheless independently analyze those defenses here. Eleventh Amendment immunity prevents private citizens from bringing actions in federal court against states. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984). Aside from suits for injunctive relief under *Ex parte Young*, two other clear exceptions apply: Congress may statutorily abrogate states' Eleventh Amendment sovereign immunity, or states may waive their sovereign immunity and consent to be sued by private parties. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Plaintiff is suing the Commonwealth defendants under 42 U.S.C. § 1983, which does not by itself override Eleventh Amendment sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 342 (1979). And the Commonwealth defendants have not consented to being sued except under limited circumstances, none of which are present in this case. 42 Pa. C.S. § 8521 *et seq.*

**\*5** The exception recognized in *Ex parte Young* allows courts to provide only prospective, equitable relief to enjoin state actors from ongoing violations of federal law. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). On the record here, Plaintiff's claim for injunctive relief fails, because PERA's system of exclusive representation does not violate Plaintiff's First Amendment free speech and associational rights. In *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984), the Supreme Court upheld Minnesota's system of public sector collective bargaining, which allowed the state to discuss non-mandatory subjects of bargaining solely with employees' exclusive representative. The *Knight* court rejected dissenting teachers' arguments that such a scheme harmed their First Amendment free speech and associational interests, explaining that "[t]he state has in no way restrained appellees' freedom to speak on any education-related issue or their freedom to associate or not to associate with whom they please, including the exclusive representative. Nor has the state attempted to suppress any ideas." *Id.* at 288.

Read properly, *Janus* reaffirms rather than undermines *Knight*. Although *Janus* contains a brief passage stating that exclusive representation is "a significant impingement on associational freedoms that would not be tolerated in other contexts," earlier in that same sentence the Court held "[i]t is also not disputed that the State may require that a union serve as exclusive bargaining agent for its employees." *Janus*, 138 S. Ct. at 2478. Furthermore, *Janus* emphasizes elsewhere that "States can keep their labor-relation systems exactly as they are" and makes no reference to *Knight* in the opinion. *Id.* at 2485 n.27. In that regard, if *Knight* were overruled, public employers would lack a readily identifiable, authorized representative with whom to negotiate, and the practical challenges for public employers in managing their workforce would be daunting.

The Third Circuit has not yet addressed the issue, but the Eighth and Ninth Circuits have held that the Supreme Court sanctioned the practice of exclusive representation in public sector collective bargaining in *Knight* and agree that *Janus* cannot be read to have overruled it. *Bierman v. Dayton*, 900 F.3d 570, 574 (8th Cir. 2018) (noting that "the constitutionality of exclusive representation standing alone was not at issue" in *Janus*); *Mentele v. Inslee*, 916 F.3d 783, 789 (9th Cir. 2019) ("*Janus*'s reference to infringement caused by exclusive union representation...is not an indication that the Court intended to revise the analytical underpinnings of *Knight* or otherwise reset the longstanding rules governing the permissibility of mandatory exclusive representation.").

Based on my reading of *Janus*, and these circuit decisions, I decline to hold that Local 668's status as an exclusive representative for the purposes of collective bargaining under PERA violates Plaintiff's First Amendment speech or associational rights. Consequently, there is no ongoing violation of federal rights that Plaintiff can seek to enjoin under *Ex parte Young*.

### IV. Conclusion

Because Plaintiff's complaints as to past conduct are moot, and because there is no ongoing constitutional violation, the Commonwealth Defendants are entitled to judgment as a matter of law. An appropriate order will be issued.

/s/ Gerald Austin McHugh

United States District Judge

**All Citations**

Slip Copy, 2019 WL 5963226

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.